**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION – DETROIT**

**IN THE MATTER OF:**

| | |
|---|---|
| Michigan Commercial Door Group, LLC, | Bankruptcy Case No. 18-40809 |
| | Chapter 11 |
| Debtor. | Hon. Phillip J. Shefferly |

**DEBTOR'S MOTION FOR (A) AN ORDER (I) ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (II) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) APPROVING FORM AND MANNER OF THE SALE, CURE, AND OTHER NOTICES; AND (IV) SCHEDULING AN AUCTION AND A HEARING TO CONSIDER THE APPROVAL OF THE SALE; (B) ORDER (I) APPROVING THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; AND (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) <u>CERTAIN RELATED RELIEF</u>**

Michigan Commercial Door Group, LLC (the "<u>Debtor</u>"), by and through its undersigned counsel, hereby submits this motion (the "<u>Motion</u>") pursuant to, *inter alia*, sections 105, 363, 365, and 503 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "<u>Bankruptcy Code</u>"), and rules 2002, 4001, 6004, 6006, 9006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (each a "<u>Bankruptcy Rule</u>," and, collectively, the "<u>Bankruptcy Rules</u>") and rules 6004-1 and 9014-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Michigan (each a "<u>Local Rule</u>," and, collectively, the "<u>Local</u>

Rules"), for the entry of (A) an order (the "<u>Bidding Procedures Order</u>"), substantially in the form attached hereto as **Exhibit 1**, (I) approving the Debtor's proposed auction and bidding procedures (the "<u>Bidding Procedures</u>"), in substantially the form attached as an exhibit to the Bidding Procedures Order, to be employed in connection with the proposed sale (the "<u>Sale</u>") of substantially all of the Debtor's assets (collectively, the "<u>Assets</u>"); pursuant to the terms of that certain asset purchase agreement (including all exhibits, schedules, and ancillary agreements related thereto, and as may be amended and in effect, the "<u>APA</u>") by and among the Debtor and Gregory Kiesgen (the "<u>Buyer</u>" or the "<u>Stalking Horse</u>"), dated as of July 23, 2018, a copy of which is attached hereto as **Exhibit 2**; (III) establishing procedures for the assumption and assignment of executory contracts and unexpired leases; (IV) approving the form and manner of notice of the Sale, the notice of assumption and assignment of executory contracts and unexpired leases, including the form and manner of notice of proposed cure amounts (the "<u>Cure Notice</u>"), and the other notices set forth herein; and (V) scheduling an auction (the "<u>Auction</u>") and a hearing (the "<u>Sale Hearing</u>") to consider approval of the Sale; and (B) an order (the "<u>Sale Order</u>") authorizing (I) the Sale of the Assets to the bidder with the highest or otherwise best bid (the "<u>Successful Bidder</u>") pursuant to the APA free and clear of all liens, claims, encumbrances and interests (other than Permitted Encumbrances and Assumed Liabilities), including rights or

claims based on any successor or transferee liability; as provided therein; and (II) the Debtor's assumption and assignment of the applicable executory contracts and/or unexpired leases to the Successful Bidder; and (C) certain related relief.[1]  In support of the Motion, the Debtor respectfully represents as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.   This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).   Venue of this proceeding and this Motion is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105, 363, 365, and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, 9007, and 9014 and Local Rules 6004-1 and 9014-1.

## Background

3.      On January 22, 2018 the Debtor filed a voluntary petition (the "Petition Date") in this Court for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").   The Debtor continues to manage and operate its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the APA.

4. No trustee or examiner has been appointed in this case and no committee has been appointed or designated.

5. Natalia K. Gentry is the responsible person for the Debtor.

6. The Debtor specializes in the distribution, installation, and service of commercial and industrial doors, material handling equipment, and other diversified products. It offers 24-hour repair and new installation services for its customers across the State of Michigan. The Debtor prides itself on its customer service and expertise supplying and servicing a variety of industries with door and truck dock equipment.

7. The Debtor has determined, in the exercise of its business judgment, that the best way to maximize the value of its assets is to sell such assets through the Sale pursuant to section 363 of the Bankruptcy Code. To this end, the Debtor has executed the APA with the Buyer to provide for the sale of the Assets to the Buyer (subject to higher or otherwise better bids) for $110,000.00. As part of the Sale, the Successful Bidder will assume the applicable executory contracts and/or unexpired leases relating to such executory contracts and/or unexpired leases.

8. The Sale of the Assets is intended to preserve the jobs of a substantial portion of the Debtor's employees, relieve the estate of substantial obligations relating to such assets, reduce the estate's liabilities through the assumption and assignment of the relevant executory contracts and/or unexpired leases, and avoid

the further deterioration in the value of the Assets.

9.    The Debtor and its professionals have been and will continue exposing the Assets to competitive bidding through a marketing and auction process pursuant to the Bidding Procedures.  If no timely, conforming Qualified Bids, other than the Qualified Bid submitted by the Buyer, for the Assets are received, there shall be no Auction for such Assets, and the Buyer shall be the Successful Bidder for the Assets.  The Debtor will determine whether any Bid for the Assets is a Qualified Bid and will conduct an Auction with respect to all Qualified Bids as the Debtor deems appropriate and in the best interests of the estate.

10.    During the pendency of the bankruptcy case, the Debtor has marketed its assets for sale including through advertising with Crain's Detroit, online resources, including www.BizBuySell.com, and reaching out to other companies in the marketplace.

11.    The Debtor believes that pursuing the Sale as contemplated in the Bidding Procedures, including a Sale of the Assets to the Buyer (subject to higher and better offers), is the course of action most likely to maximize the value of the Assets, while ensuring that a consummation of a Sale of the Assets will occur if no other bids are received. As a result, and in an exercise of its fiduciary obligation to maximize the recoverable value of its estate, the Debtor has determined to execute the APA and to seek authority of this Court to engage in the Sale process

contemplated by this Motion.

12.     Accordingly, by this Motion, the Debtor seeks authority to implement the Bidding Procedures outlined herein so as to market and solicit offers for the Assets efficiently.  Pursuant to this Motion, the Debtor requests that the Court enter the proposed Bidding Procedures Order, which approves the Bidding Procedures, the Assumption and Assignment Procedures (as defined below), and the various notices set forth herein.  In addition, the Bidding Procedures set forth the timetable for conducting the Auction and having a Sale Hearing.  Upon conclusion of the Auction and selection of the highest or otherwise best bid, the Debtor will request that the Court enter the proposed Sale Order authorizing the Sale.  At the Sale Hearing, the Debtor will also seek approval, pursuant to section 365 of the Bankruptcy Code, of the assumption and assignment of the relevant executory contracts and/or unexpired leases to the Successful Bidder for the applicable Assets.

## Relief Requested

13.     By this Motion, the Debtor respectfully requests that the Court enter an order: (i) establishing bidding procedures for the Sale of the Assets; (ii) establishing procedures relating to the assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Procedures"); (iii) approving form and manner of sale, cure and other related notices; and (iv)

scheduling an auction, if needed, and a hearing to consider the proposed Sale; (B) an order (i) approving the Sale of the Assets free and clear of all liens, claims, encumbrances and interests (with such liens, claims, encumbrances and interests attaching to the sale proceeds); and (ii) approving the assumption and assignment of the relevant executory contracts and unexpired leases to the Successful Bidder; and (C) certain related relief.

## I. The Proposed Sale of the Assets

### a. The Stalking Horse APA

14.     The following is a summary of the principal terms of the APA:[2]

    a.    <u>Purchase Price:</u> Under section 3.1 of the APA, the aggregate consideration (the "<u>Purchase Price</u>") for the purchase, sale, assignment, and conveyance of the Assets consists of: (i) cash (the "<u>Cash Consideration</u>") in an amount equal to $110,000.00.

    b.    <u>Assets:</u> Section 2.1 of the APA provides that the Buyer shall purchase substantially all of the Debtor's assets, as defined in section 1.3 and Exhibit A of the APA.

    c.    <u>Excluded Assets:</u> Section 2.1 of the APA provides that the Seller shall retain and the Buyer will not acquire any right, title, or interest in certain assets as defined in section 1.21 of the APA.

---

[2] The following summary is qualified in its entirety by reference to the provisions of the APA. In the event of any inconsistencies between the provisions of the APA and the terms herein, the terms of the APA shall govern. Capitalized terms used in this Section that are not otherwise defined in this Motion shall have the meanings assigned to such terms in the APA.

d.  <u>Assumed Liabilities:</u> Section 1.4 of the APA provides that the Buyer will assume and perform and discharge in accordance with their respective terms, among others, Liabilities in respect of any Assumed Contracts but only to the extent that such Liabilities thereunder are required to be performed after the Closing Date.

e.  <u>Termination.</u> Section 4 of the APA provides for the termination of the APA according to the terms therein.

f.  <u>Closing Conditions.</u> Pursuant to section 10 of the APA, in addition to customary closing conditions, including Court approval, the obligation of the Buyer to consummate the transactions contemplated by the APA is subject to the satisfaction of closing conditions more fully set forth in the APA.

**b. Bidding Procedures**

15.    While all interested bidders should read the Bidding Procedures in their entirety, the following describes the salient points of the Bidding Procedures:[3]

a.  <u>Bid Requirements:</u> Any bid by a Bidder must be submitted in writing and be determined by the Debtor to have satisfied the following requirements:

(1)  <u>Good Faith Deposit:</u> Each Bid must be accompanied by a cash deposit in the amount of twenty-five thousand dollars ($25,000.00), which deposit shall be held in an interest-

---

[3] The following summary is qualified in its entirety by reference to the provisions of the Bidding Procedures. In the event of any inconsistencies between the provisions of the Bidding Procedures and the terms herein, the terms of the Bidding Procedures shall govern. Unless otherwise defined in the summary set forth in the accompanying text or elsewhere in this Motion, capitalized terms shall have the meanings ascribed to them in the Bidding Procedures.

bearing escrow account to be identified and established by the Debtor.

(2)     Better Terms: Any Bid for the Assets must be on terms that the Debtor, in its business judgment, determines is substantially better for the Debtor than the terms of the APA.

(3)     Executed Agreement: Each Bid must be based on the APA, and must include binding, executed transaction documents, signed by an authorized representative of such Bidder. A Bid must also include a copy of the counter APA (including all exhibits thereto) marked against the APA, to show all changes requested by the Bidder (including those related to the Purchase Price).

(4)     Scope of Bid: A Bid must be for all or substantially all of the Assets.

(5)     Minimum Bid: A Bid for the Assets must have a Purchase Price, including any assumption of liabilities, that in the Debtor's reasonable business judgment has a value of at least one hundred twenty thousand dollars ($120,000.00). A Bid for the Assets may not be contingent upon any financing conditions whatsoever.

(6)     Designation of Assigned Contracts and Leases:  A Bid must identify the executory contracts and unexpired leases with respect to which the Bidder seeks assignment from the Debtor (the "Purchased Contracts").

(7)     Designation of Assumed Liabilities:  A Bid must identify all liabilities that the Bidder proposes to assume.

(8)     Corporate Authority:  A Bid must include written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the proposed transaction (an "Alternate Transaction"); provided that, if the Bidder is an entity specially formed for the purpose of effectuating the Alternate Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the Alternate Transaction by the ultimate equity holder(s) of such Bidder.

(9)     Disclosure of Identity of Bidder:  A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets, including any ultimate equity holders in the case of a Bidder that is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation, including any agreements, arrangements, or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid. A Bid must also fully disclose any connections or agreements with the Debtor, the Buyer, or any other known, potential, prospective Bidder or Qualified Bidder, and/or any officer, director, or equity security holder of the Debtor.

(10)    Proof of Financial Ability to Perform:  A Bid must include written evidence sufficient to cause the Debtor to conclude that the Bidder has the necessary financial ability to close the Alternate Transaction, and comply with section 365 of the Bankruptcy Code, including providing adequate assurance of future performance under all contracts and leases to be assumed and assigned in such Alternate Transaction. Such information must include, *inter alia*, the following:

(a) contact names and numbers for verification of non-contingent financing sources;

(b) evidence of the Bidder's internal resources and proof of unconditional debt funding commitments from a recognized banking institution and, if applicable, unconditional equity commitments in an aggregate amount equal to the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtor in the amount of the cash portion of such Bid, in each case, as are needed to close such Alternate Transaction; and

(c) any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtor demonstrating that such Bidder has the ability to close the Alternate Transaction.

(11) <u>Contact Information:</u>  A Bid must provide the identity and contact information for the Bidder.

(12) <u>Contingencies:</u>  Each Bid (i) may not contain representations and warranties, covenants, or termination rights materially more onerous in the aggregate to the Debtor than those set forth in the APA, as determined by the Debtor in good faith, and (ii) may not be conditioned on obtaining financing, internal approvals, or due diligence time or cost requirements.

(13) <u>Irrevocable:</u>  Each Bid must be irrevocable until five (5) business days after the Sale Hearing; <u>provided</u> that if such Bid is accepted as the Successful Bid or the Backup Bid,

such Bid shall continue to remain irrevocable until after the closing of the Sale.

(14) <u>Compliance with Diligence Requests</u>: The Bidder submitting the Bid must have complied with all requests for additional information and due diligence access from the Debtor to the reasonable satisfaction of the Debtor.

(15) <u>Confidentiality Agreement:</u> To the extent not already executed, the Bid must include an executed confidentiality agreement (in substantially the form attached as **Exhibit 4** to the Motion).

(16) <u>Termination Fees:</u> The Bid must not entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement and, by submitting the Bid, the Bidder waives the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or participation in any Auction.

(17) <u>Closing Date:</u> The Bid must include a commitment to close the transactions contemplated by the counter APA by no later than August 31, 2018.

(18) <u>Bid Deadline:</u> All Bids must be submitted on or prior to August 17, 2018 at 5:00 P.M. (Eastern Time) (the "Bid Deadline").

### c. **The Notices**

15. Under Bankruptcy Rule 2002(a) and (c), the Debtor must notify its creditors of the proposed Sale of the Assets, including disclosure of the time and place of the Auction and the Sale Hearing, the terms and conditions of the Sale, the

Bidding Procedures and the deadline for filing any objections thereto. Accordingly, the Debtor has served a copy of this Motion and the proposed Bidding Procedures Order (the "Notice of Motion") in the manner set forth herein.

16. The Debtor also proposes, within three (3) business days after the entry of the Bidding Procedures Order, or as soon thereafter as practicable (the "Mailing Date"), to serve a copy of the Sale Notice (as defined below), the Bidding Procedures Order, and the Bidding Procedures by first-class mail, postage prepaid, or by email, where available, upon (a) all entities known to have expressed a *bona fide* interest in purchasing any of the Assets; (b) all entities known to have asserted any lien, claim, or encumbrance in or upon any of the Assets; (c) all federal, state, and local environmental, regulatory, or taxing authorities or recording offices that have a reasonably known interest in the relief requested by the Motion; (d) the Office of the United States Trustee; and (e) all persons and entities that have filed a request for service of filings in this chapter 11 case pursuant to Bankruptcy Rule 2002.

17. In addition, on the Mailing Date, or as soon thereafter as practicable, the Debtor will serve by first-class mail, postage prepaid, the notice of the sale, substantially in the form attached as **Exhibit 5** to the Motion (the "Sale Notice"), upon all other known creditors of the Debtor and all counterparties to the Debtor's executory contracts and unexpired leases.

### d. Assumption and Assignment of the Executory Contracts and Unexpired Leases

18.     In accordance with the proposed Bidding Procedures Order, within five (5) business days after the entry of the Bidding Procedures Order or as soon as practicable thereafter, the Debtor will file with this Court and serve the Cure Notice on each counterparty to an executory contract or unexpired lease related to the Assets, substantially in the form attached as **Exhibit 6** to the Motion, which Cure Notice shall: (i) state the amounts necessary to cure defaults, if any, that the Debtor believes are necessary to assume such contracts or leases in accordance with section 365 of the Bankruptcy Code (the "Cure Amount"); (ii) notify the non-Debtor counterparty that such party's contract(s) or lease(s) may be assumed and assigned to the Successful Bidder; (iii) state the date of the Sale Hearing and that objections to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing, or at a later hearing, as determined by the Debtor; and (iv) state the deadline by which the non-Debtor counterparty may file an objection to the Cure Amount(s) or to the assumption and assignment of the applicable contract(s) and/or lease(s); provided, however, that the inclusion of a contract, lease or agreement on the Cure Notice shall not constitute an admission that such contract, lease or agreement is an executory contract or unexpired lease or that it will, in fact, be assumed and assigned in connection with any Sale of the Assets. If no Cure

Amount is listed, the Debtor believes that no amount to cure defaults under the respective executory contract or unexpired lease is owed by it thereunder. The Debtor reserves all of its rights, claims, and causes of action with respect to the contracts, leases, and agreements listed on the Cure Notice.

19.     The Debtor proposes that any objection to the Cure Amount or the assumption and assignment of the applicable contract(s) and/or lease(s) must be filed with the Clerk of the Court, 211 W. Fort St., Detroit, Michigan 48226, and served so as to be received by: (a) counsel to the Debtor, Stevenson & Bullock, PLC, Attn: Elliot Crowder and Ernest M. Hassan, III, 26100 American Drive, Suite 500, Southfield, MI 48034, on or before August 17, 2018 (the "Cure Objection Deadline").  Any such objection must also state (i) the basis for such objection and (ii) with specificity what Cure Amount(s) the non-Debtor counterparty to the relevant executory contract(s) or unexpired lease(s) believes is required (in all cases with appropriate documentation in support thereof).

20.     Any objection solely to the Cure Amount(s) may not prevent or delay the Debtor's assumption and assignment of assumed and assigned contract(s) or lease(s).  If an entity objects solely to Cure Amount(s), the Debtor may, with the consent of the relevant Successful Bidder, hold the claimed Cure Amount(s) in reserve pending further order of the Court or mutual agreement of the parties. So long as the Cure Amount(s) are held in reserve, and there are no other unresolved

objections to assumption and assignment of the applicable assumed and assigned contract(s) or lease(s), the Debtor can, without further delay, assume and assign such contract(s) or lease(s). Under such circumstances, the objecting non-Debtor counterparty's recourse is limited to the funds held in reserve.

21.     If no objection to the Cure Amount(s) is timely received, the Cure Amount(s) set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any Purchased Contracts or other document(s) as of the date of the Cure Notice.

22.     On or before July 30, 2018, the Buyer will provide to the Debtor a list of those executory contracts and unexpired leases that the Buyer elects to have assumed and assigned (if any) (the "Buyer Designated Contracts") to the Buyer at Closing pursuant to section 365 of the Bankruptcy Code.

23.     As soon as reasonably practicable after receiving the schedule from each Qualified Bidder of those executory contracts or unexpired leases it wishes to assume and have assigned to it, if any, and no later than the date of the Auction, the Debtor shall file with the Court together with information related to the adequate assurance with respect to such Qualified Bidder, if applicable.

24.     To the extent that any non-Debtor counterparty wishes to object to the adequate assurance of future performance by the Buyer or another Qualified Bidder under the applicable executory contract(s) or unexpired lease(s), then such non-

Debtor counterparty shall file a written objection with the Court and serve on the Debtor and the applicable Qualified Bidder(s) so that such objection is received on or before August 17, 2018.

25.     To the extent that any non-Debtor counterparty does not timely file and serve an objection as set forth above herein, such counterparty will be:  (i) deemed to have consented to the Cure Amount(s), if any, set forth in the Cure Notice; (ii) barred, estopped, and enjoined from asserting any additional Cure Amount(s) under the assumed and assigned executory contract(s) or unexpired lease(s); (iii) barred from objecting to the assumption and assignment of the applicable assumed and assigned executory contract(s) or unexpired lease(s) to the Successful Bidder; and (iv) barred from objecting to adequate assurance of future performance by the assignee.

## II. Grounds for Approval of the Motion

### a. The Bidding Procedures Are Fair and Reasonable

26.     In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or by auction.  In accordance with the Bidding Procedures, the Debtor seeks to market and sell its Assets through a competitive bidding process to maximize value and avoid the further deterioration of the Debtor's business.  Consequently, the Debtor believes

that good cause exists to expose the Assets to sale pursuant to the procedures proposed herein.

27.    The Debtor believes that the Bidding Procedures are appropriate under sections 105, 363 and 365 of the Bankruptcy Code to ensure that the bidding and sale process is conducted fairly and will yield the highest value for its estate. The Bidding Procedures are designed to facilitate a competitive bidding process in which all potential bidders are encouraged to participate and submit competing bids for the Assets. The Bidding Procedures also provide potential bidders with sufficient notice and opportunity to acquire information necessary to submit a timely and informed bid.  Thus, the Debtor and all parties in interest can be assured that the consideration for the Assets, including the Purchase Price being paid by the Buyer for the Assets if no other party submits a Qualified Bid for such assets, will be fair and reasonable.  At the same time, the Bidding Procedures provide the Debtor with the opportunity to consider all competing offers and to select, in its reasonable business judgment the highest or otherwise best offer for the Assets.

28.    The Debtor believes that the Bidding Procedures provide an appropriate framework for the sale of the Assets that will enable the Debtor to review, analyze, and compare, in a relatively uniform fashion, all offers received to determine which offer is the highest or otherwise best and in the best interests of the Debtor's estate. Moreover, the Debtor believes that the proposed deadlines and

milestones for noticing, marketing and selling the Assets offer potential bidders ample opportunity to prepare and submit Qualified Bids for such assets. Accordingly, the Debtor believes the Court should approve the Bidding Procedures.

### b. Approval of the Sale Is Warranted Under Section 363(b) of the Bankruptcy Code

29. Compelling business justifications exist for the proposed Sale. First, the Debtor does not have sufficient liquidity or access to financing to fund a protracted and contentious chapter 11 case. As a result, and cognizant of its current monthly cash outlay, continued use of cash collateral, the depletion of its assets through normal operations, and its fiduciary obligations, the Debtor believes that a sale of substantially all of its assets offers the best available alternative at this juncture. Accordingly, the Debtor has determined that it should pursue the Sale of the Assets to the Buyer on the terms set forth in the APA, subject to higher and better offers as provided in the Bidding Procedures.

30. Notwithstanding the Debtor's conclusion that the terms of the APA are fair and reasonable, it will nonetheless expose the Assets to higher or otherwise better offers. The Sale of the Assets pursuant to section 363 of the Bankruptcy Code will enable the expeditious transfer of such assets, an approach necessary to maximize and preserve the going-concern value of such assets.

31.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

32.     In approving the sale of assets outside the ordinary course of business and outside of a chapter 11 plan pursuant to section 363 of the Bankruptcy Code, courts, including those in the Sixth Circuit, have adopted the "sound business reason" test established by the Second Circuit in *Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corp.),* 722 F.2d 1063 (2nd Cir. 1983). *See Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 391 (6th Cir. 1986); *In re Nicole Energy Servs., Inc.,* 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008); *In re Jillian's Entm't Holdings,* 327 B.R. 616, 617 (Bankr. W.D. Ky. 2005) (stating that the *Lionel* standard has been adopted by the vast majority of courts); *see also In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of a debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the Buyer is acting in good faith).

33. A debtor's showing of sound business justification need not be unduly exhaustive; instead the debtor or trustee is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.,* 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. *See Lionel*, 722 F.2d at 1071. Bankruptcy courts are given substantial discretion in deciding whether to authorize a sale of a debtor's assets outside of the ordinary course of business. *See In re Chateaugay Corp.,* 973 F.2d 141, 144 (2nd Cir. 1992).

34. As discussed above, the Debtor and its management have concluded after due deliberation that, in light of the distressed nature of the Debtor's business, the Sale of the Assets represents the best alternative currently available. Commencing the sale process now, particularly with the benefit of an APA with respect to the Assets, will ensure that the Debtor can complete a transaction within a reasonable time. Consequently, the proposed Sale of the Assets in accordance with the Bidding Procedures satisfies the "sound business purpose" test for the sale of assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code.

35. While the Debtor is confident that its efforts have yielded fair and reasonable consideration for the Assets, adequate "market exposure" and the

auction process—the best means for establishing whether a fair and reasonable price is being paid—will provide additional support.

36.    In addition to a fair and reasonable value offered by the Buyer for the Assets, the APA is the product of vigorous arms' length, good faith negotiations between the relevant parties.  Finally, adequate and reasonable notice of the sale process is being provided, as set forth herein.

37.    Accordingly, the Debtor submits that the Sale of the Assets as contemplated herein and in the Bidding Procedures is in the best interests of the Debtor, its estate and creditors, and should be approved.

**c. The Assets Should Be Sold Free and Clear of Claims, Liens, Encumbrances and Interests Under Section 363(f) of the Bankruptcy Code**

38.    The Debtor also submits that the Sale of the Assets should be free and clear of any and all liens, claims, encumbrances and interests under section 363(f) of the Bankruptcy Code (other than Assumed Liabilities and Permitted Encumbrances as provided in the APA).

39.    Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of third-party interests only if:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interests; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Since section 363(f) is written in the disjunctive, any of the five conditions provides authority to sell free and clear of claims, liens and encumbrances. *See generally In re Leckie Smokeless Coal Co*., 99 F.3d 573 (4th Cir. 1996); *In re Gulf States Steel*, *Inc. of Ala.*, 285 B.R. 497, 506 (Bankr. N.D. Ala. 2002). Therefore, the Court may approve a sale free and clear of liens even if all lien holders have not consented.

40.     The Debtor submits that each lien, claim, encumbrance and interest that is not an Assumed Liability or Permitted Encumbrance under the APA satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code. If an entity with an encumbrance on the Assets does not consent to the proposed Sale of such assets, the Debtor intends to demonstrate at the Sale Hearing its satisfaction of the requirements of section 363(f) of the Bankruptcy Code. Alternatively, the Debtor may sell the Assets free and clear of any other interests under section 363(f)(5) of the Bankruptcy Code because the lien, claim, encumbrance or interest on any assets sold will attach to the cash proceeds of such Sale in their order of priority and entities holding such interests could be compelled to accept money satisfaction in legal or equitable proceedings. Accordingly, pursuant to section 363 of the Bankruptcy Code, the Debtor may sell the Assets free and clear of all claims, liens and encumbrances.

41.     Moreover, the Debtor has sent or will send the Sale Notice to any purported lienholders.  If such lienholders do not object to the proposed Sale, then their consent should reasonably be presumed.  Accordingly, the Debtor requests that unless an entity asserting a lien or encumbrance on any of the Assets (other than with respect to Assumed Liabilities and Permitted Encumbrances) timely objects to this Motion, such entity shall be deemed to have consented to any Sale approved at the Sale Hearing.

42.     It is also appropriate to sell the Assets free and clear of successor liability relating to the Debtor's business.  Such limitations on successor liability ensure that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to the Debtor. Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free and clear from successor liability relating to the debtor's business.  *See e.g.*, *In re Tran World Airlines, Inc.*, 322 F.3d 283, 288-90 (3rd Cir. 2003) (sale of assets pursuant to section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 585 (4th Cir. 1996) (affirming the sale of debtors' assets free and clear of certain taxes); *In re Insilco Techs., Inc.*, 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a 363 sale permits a buyer to take

ownership of property without concern that a creditor will file suite based on a successor liability theory).

43. The purpose of a sale order purporting to authorize the transfer of assets free and clear of all claims, liens, encumbrances and interests would be defeated if claimants could thereafter use the transfer as a basis to assert claims against a buyer arising from a seller's pre-sale conduct. Moreover, without such assurances, potential bidders may choose not to participate in the Auction or, if they did, would submit reduced bid amounts. To that end, the Successful Bidder should not be liable under any theory of successor liability relating to the Debtor's business, but should hold the Assets free and clear.

### d. A Successful Bidder Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code

44. Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *See In re Made In Detroit, Inc.,* 414 F.3d 576, 581 (6th Cir. 2005); *Miami Ctr. Ltd. P'ship v. Bank of New York*, 838 F.2d 1547, 1554 (11th Cir. 1988); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Abbotts Dairies of Penn.*, 788 F.2d 143, 147 (3rd Cir. 1986).

45.     The APA was negotiated at arm's-length, with each of the parties represented by its own advisors and counsel, and in good faith.  Accordingly, the Debtor requests that the Sale Order include a provision that the Successful Bidder for the Assets is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.  The Debtor maintains that providing the Successful Bidder with such protection will ensure that the maximum price will be received by the Debtor for the Assets.

### e. Assumption and Assignment of Certain Executory Contracts and Unexpired Leases

46.     To enhance the value of the Debtor's estate (by curtailing further administrative liability), the Debtor requests authority under section 365 of the Bankruptcy Code to assume and assign the Purchased Contracts to the Successful Bidder.  The Debtor further requests that the Sale Order provide that the Purchased Contracts will be transferred to, and remain in full force and effect for the benefit of, the Successful Bidder notwithstanding any provisions in such assigned contracts and/or leases, including those described in sections 365(b)(2), (f)(1), and (f)(3) of the Bankruptcy Code, that prohibit such assignments.

47.     A debtor in bankruptcy may, subject to court approval, assume and assign executory contracts and unexpired leases under section 365 of the Bankruptcy Code. 11 U.S.C. § 365(a).  Courts routinely approve motions to

assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that a debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See, e.g., L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.*), 209 F.3d 291, 298 (3rd Cir. 2000); *Edwin C. Levy Co. v. McLouth Steel Corp. (In re McLouth Steel Corp.)*, 20 B.R. 688, 692 (Bankr. E.D. Mich. 1982) ("In determining whether a certain contract should be assumed or rejected, the decision should rest on the business judgment of the debtor."); *In re Greektown Holdings, L.L.C.*, No. 08-53104, 2009 WL 1653461, at *1 (Bankr. E.D. Mich. May 13, 2009) (same). The assumption and assignment of the Purchased Contracts related to the Assets is an integral component of the Sale, without which the Sale would not be a viable option.

48. Section 365(b)(1) of the Bankruptcy Code requires that, if there has been a default in a debtor's unexpired lease or executory contract, other than certain nonmonetary defaults as set forth in the statute, such unexpired lease or executory contract may not be assumed unless, at the time of the assumption: (i) such default is cured or there is adequate assurance that such default will be cured, (ii) compensation or adequate assurance of compensation is provided for any actual pecuniary loss resulting from such default, and (iii) adequate assurance of future performance under the lease is provided. 11 U.S.C. § 365(b)(1)(A)-(C).

49.     As set forth above, pursuant to the terms of the proposed Bidding Procedures Order, the Debtor will send the Cure Notice to all counterparties to the executory contracts and unexpired leases notifying such counterparties of the potential assumption by the Debtor and assignment to the relevant Successful Bidder of such contract(s) and/or lease(s).  The Cure Notice will also set forth the Cure Amount, if any, owing for each such contract(s) and/or lease(s) according to the Debtor's books and records.

50.     Counterparties to such contract(s) and/or lease(s) will be given sufficient time (as set forth herein and in the proposed Bidding Procedures Order) to object to the proposed Cure Amounts, if any, set forth in the Cure Notice.  If no objection is filed with regard to a particular Cure Amount, such Cure Amount shall be binding on the Debtor, the Successful Bidder and the applicable non-Debtor counterparty.  The payment of the Cure Amounts specified in the Cure Notice (or a different amount, either agreed to by the Debtor or resolved by the Court as a result of a timely-filed objection by the relevant non-Debtor counterparty) will be in full and final satisfaction of all obligations to cure defaults and compensate the counterparties for any pecuniary losses under the applicable executory contract(s) and/or lease(s) pursuant to section 365(b)(1) of the Bankruptcy Code, unless the Debtor determines, before the Sale Hearing, that a particular contract or lease is not

executory or unexpired, and does not need to be cured to transfer the relevant Assets to the Successful Bidder.

51.     Section 365(f)(2)(B) of the Bankruptcy Code states that a debtor may assign its unexpired leases and executory contracts if, among other things, the assignee provides "adequate assurance of future performance."     11 U.S.C. § 365(f)(2)(B).  If necessary, the Successful Bidder must submit written evidence of its ability to provide adequate assurance of future performance under the applicable contracts or leases as set forth above and in the Bidding Procedures Order.  The affected non-Debtor counterparties will also be able to challenge the ability of the Successful Bidder to provide adequate assurance as provided in the Bidding Procedures Order.

52.     Any assumption and assignment of Purchased Contract will be subject to all of the provisions of such contract(s) and/or lease(s), to the extent required by applicable law and in accordance with applicable provisions of the Bankruptcy Code.  The Bidding Procedures are designed to ensure that any Successful Bidder is financially able and prepared to undertake all of the relevant obligations under the assigned contract(s) and/or lease(s), and the Debtor, together with the relevant Successful Bidder, will establish, as necessary, at the Sale Hearing, the requisite adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code with respect to the potential assumption and assignment of the

applicable assigned contract(s) and/or lease(s). Consequently, assumption and assignment of the Purchased Contracts in connection with the Sale of the Assets is appropriate under the circumstances.

### f. The Form, Manner, and Extent of Notice of the Motion and the Proposed Sale are Appropriate and Adequate Under the Circumstances

63.     The Debtor will serve the Sale Notice and the Cure Notice in accordance with the Bidding Procedures Order, and will serve this Motion as set forth herein. The notice of the proposed Sale to be provided by the Debtor as set forth herein sufficiently describes the terms and conditions of the proposed Sale.

64.     Several sections of the Bankruptcy Code and Bankruptcy Rules dictate the sufficiency of notice and adequacy of service. As discussed below, the content and manner of service of this Motion and the related notices satisfy all such requirements.

65.     Section 363 of the Bankruptcy Code provides that a trustee may sell property "after notice and hearing." Under section 102(1) of the Bankruptcy Code, the phrase "after notice and hearing" means "notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). As set forth above, creditors have been provided notice of the salient details regarding this Motion and the Sale

Hearing. Accordingly, notice is sufficient under section 363 of the Bankruptcy Code.

66.     Bankruptcy Rule 2002 requires twenty-one (21) days' notice of the proposed sale of property other than in the ordinary course of business.  In addition, Bankruptcy Rule 2002 provides that notice of a sale shall "include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections." Fed.R.Bankr.P. 2002.  As set forth above, the notice of this Motion that has been and will be provided by the Debtor satisfies each of these requirements.

67.     Bankruptcy Rule 6004 requires that notice of sales of property outside of the ordinary course of business complies with Bankruptcy Rule 2002.  As set forth above, the Debtor has complied with Bankruptcy Rule 2002.  Bankruptcy Rule 6006 requires notice of a motion to assume and assign an executory contract or unexpired lease to be served on the counterparty to such contract or lease, as well as on other parties in interest as the court may direct.  The Sale Notice and the Cure Notice have been or will be served on all counterparties to all potentially Purchased Contracts, thereby satisfying this requirement.

68.     The notices of this Motion that are being provided as described herein, including the notice being provided by publication as set forth above, are "reasonably calculated" to apprise interested parties of the pendency of the matter

and to afford them an opportunity to object. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). Parties in interest have been, and should be found to have been, afforded adequate notice of this Motion, the Sale, the Bidding Procedures and the other relief requested herein. The Debtor submits that the notice it has provided and intends to provide as outlined above with respect to the proposed Sale, the Bidding Procedures, and the Cure Amounts, as applicable, is reasonable and appropriate and constitutes good and adequate notice of the sale of the Assets and the procedures and proceedings related thereto and therefore should be approved by this Court.

### g. The Stay of the Sale Order Should Be Waived

69.     Pursuant to Bankruptcy Rules 6004(h) and 6006(d), an order authorizing the sale of property or the assignment of an unexpired lease is stayed for fourteen (14) days after the entry of an order unless the Court orders otherwise.

70.     The Debtor requests that this Court order that such stay is not applicable with respect to the Sale of the Assets and assignment and assumption of the Purchased Contracts. The Debtor has lost money since the commencement of this bankruptcy case, to the detriment of all creditors. To delay closing on the Sale will burden the estates and require unnecessary expenditures of the Debtor's limited resources, to the detriment of Lender, Grow Michigan, the holders of administrative expenses and unsecured creditors. The Debtor notes that requests to

waive the stay imposed under Bankruptcy Rules 6004(h) and 6006(d) are routinely granted. *See*, *e.g.*, *In re the Great Atlantic & Pacific Tea Co., Inc.*, No. 15-23007 (SCC) (Bankr. S.D.N.Y. Aug. 11, 2015); *In re Delia's, Inc.*, No. 14-23678 (RDD) (Bankr. S.D.N.Y. Feb. 10, 2015); *In re Midway Games Inc.*, No. 09-10465 (KG) (Bankr. D. Del. June 3, 2009); *In re Nortel Networks Inc.*, No. 09-10138 (Bankr. D. Del. Mar. 3, 2009).

## No Prior Request

71.     No prior request for the relief sought herein has been requested from this Court or any other court.

## Notice

72.     Notice of this Motion has been provided to: (a) the Office of the United States Trustee; and (b) all persons and entities that have filed a request for service of filings in this chapter 11 case pursuant to Bankruptcy Rule 2002.

73.     The Debtor submits that, under the circumstances, no other or further notice is required.

**WHEREFORE,** the Debtor respectfully request that the Court grant the relief requested in this Motion and grant the Debtor such other and further relief as this Court deems just and proper.

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Elliot G. Crowder
Ernest M. Hassan, III (P67815)
Elliot G. Crowder (P76137)
Counsel for Debtor
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: ehassan@sbplclaw.com
Email: ecrowder@sbplclaw.com

**MICHIGAN COMMERCIAL DOOR
GROUP, LLC**

By: /s/ Natalia K. Gentry
Natalia K. Gentry
Its:    Responsible Person

Dated:  July 24, 2018

# EXHIBIT 1
## BIDDING PROCEDURES ORDER

**IN THE MATTER OF:**

| | |
|---|---|
| Michigan Commercial Door Group, LLC, | Bankruptcy Case No. 18-40809 |
| | Chapter 11 |
| Debtor. | Hon. Phillip J. Shefferly |

**ORDER (I) ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (II) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) APPROVING FORM AND MANNER OF THE SALE, CURE, AND OTHER NOTICES; (IV) SCHEDULING AN AUCTION AND A HEARING TO CONSIDER THE APPROVAL OF THE SALE; AND (V) GRANTING CERTAIN RELATED RELIEF**

Upon the motion (the "Motion")[4] of the Debtor (A) for an order (this "Order" or the "Bidding Procedures Order"): (I) approving the proposed auction and bidding procedures, which are attached as **Exhibit 3** to the Motion (the "Bidding Procedures"), to be employed in connection with the proposed sale (the "Sale") of the Debtor's assets (collectively, the "Assets") pursuant to the terms of that certain Asset Purchase Agreement, dated as of July 23, 2018, by and among the Michigan Commercial Door Group, LLC (the "Debtor") and Gregory Kiesgen (the **"Buyer"**), together with all related documents and agreements as well as all exhibits, schedules, and addenda thereto (the "APA"); (II) establishing procedures

---

[4] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion, the Bidding Procedures or the APA, as applicable.

for the assumption and assignment of executory contracts and unexpired leases; (III) approving the form and manner of notice of the Sale, the notice of assumption and assignment of executory contracts and unexpired leases, including the form and manner of notice of proposed cure amounts (the "Cure Notice") and the other notices set forth herein; (IV) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to consider approval of the Sale and (V) granting related relief (collectively, (A)(I) through (V) above, the "Bidding Procedures Relief"); and (B) for an order (the "Sale Order") authorizing (I) the Sale of the Assets to the bidder with the highest or otherwise best bid (the "Successful Bidder") pursuant to the APA, in each case free and clear of all liens, claims, encumbrances and interests other than Permitted Encumbrances and Assumed Liabilities as provided therein; and (II) the Debtor's assumption and assignment of the applicable executory contracts and/or unexpired leases to the Successful Bidder; and the Court having considered that portion of the Motion seeking the Bidding Procedures Relief, and the arguments of counsel made and the evidence adduced, at the hearing on that portion of the Motion (the "Bidding Procedures Hearing"); and due and sufficient notice of the Bidding Procedures Hearing and the relief sought therein having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and all objections thereto (the "Objections") and it appearing that the Bidding Procedures

Relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby,

**FOUND, CONCLUDED AND DETERMINED THAT:**[5]

A.     This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested in the Motion are, *inter alia*, sections 105, 363, 365, and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, 9007 and 9014 and Local Rules 6004-1 and 9014-1.

B.     The relief granted herein is in the best interests of the Debtor, its estate and creditors, and other parties in interest.

C.     The Debtor has articulated good and sufficient business reasons for the Court to (i) approve the Bidding Procedures, the Assumption and Assignment Procedures, the form and manner of the Sale Notice, the Cure Notice and the other

---

[5] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

notices of the Motion, the Auction, and the Sale Hearing as set forth herein, (ii) set the date for the Auction, the Sale Hearing and the other dates set forth herein, and (iii) grant the relief requested in the Motion as provided herein.

D.     Due, sufficient and adequate notice of the Bidding Procedures Hearing and the relief granted in this Order has been given in light of the circumstances and the nature of the relief requested, and no other or further notice thereof is required. The Debtor's notice of the Motion and the relief requested in the Motion for which approval was sought at the Bidding Procedures Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice under Bankruptcy Rules 2002, 4001, 6004, and 6006, and no other or further notice of, or hearing on, this Order and that portion of the Motion being approved hereby is required.

E.     The Debtor's proposed Sale Notice, Cure Notice, and other notices contemplated hereunder with respect to the Sale, the Auction, the Assumption and Assignment Procedures, and the Sale Hearing are appropriate and reasonably calculated to provide all interested parties with timely and proper notice thereof and no further notice of each is necessary or required.

F.     The Bidding Procedures, which are incorporated by reference as if fully set forth herein, are fair, reasonable, and appropriate, were negotiated in good

faith by the Debtor and the Buyer and represent the best method for maximizing the value of the Debtor' estates in connection with the Sale.

G.     The Assumption and Assignment Procedures are reasonable and appropriate.

**IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Motion is GRANTED as set forth herein.

2.     Any objection to the portions of the Motion seeking approval of the Bidding Procedures Relief or any other relief granted in this Order, to the extent not resolved, waived, or withdrawn, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.     The APA is hereby approved and is appropriate and reasonably calculated to enable the Debtor and other parties in interest to easily compare and contrast the differing terms of the bids presented at the Auction.

<u>**Bidding Procedures**</u>

4.     The Bidding Procedures are hereby approved.  In the event of any inconsistency between the Bidding Procedures as set forth in **Exhibit 3** to the Motion and any other pleading, order, or document, including this Order, the terms of the Bidding Procedures shall control. The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.  The failure to specifically include or reference any particular provision of the Bidding

Procedures in this Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

## The Bid Deadline

5.      As further described in the Bidding Procedures, a potential Bidder who desires to make a Bid for the Assets shall deliver its Bid that satisfies the bidding requirements set forth in the Bidding Procedures to counsel to the Debtor, Stevenson & Bullock, PLC, Attn: Elliot Crowder and Ernest M. Hassan, III, 26100 American Drive, Suite 500, Southfield, MI 48034; so as to be received by no later than **5:00 p.m. (Eastern Time)** on August 17, 2018 (the "Bid Deadline").

## Notices of Sale, Bidding Procedures, and the Sale Hearing

6.      The notices described below are hereby approved, and service or publication thereof (as applicable) as set forth herein constitutes proper, timely, adequate, and sufficient notice of the Sale, the Bidding Procedures, and the Sale Hearing, and no other or further notice is required.

7.      Within three (3) business days after the entry of this Order, or as soon thereafter as practicable (the "Mailing Date"), the Debtor shall serve a copy of the Sale Notice (as defined below), this Order, and the Bidding Procedures by first-class mail, postage prepaid, or by email, where available, upon: (a) all entities known to have expressed a *bona fide* interest in purchasing any of the Assets

during the pendency of the bankruptcy case; (b) all entities known to have asserted any lien, claim or encumbrance in or upon any of the Assets; (c) all federal, state, and local, regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (d) the Office of the United States Trustee; and (e) all persons and entities that have filed a request for service of filings in this case pursuant to Bankruptcy Rule 2002.

8.     On the Mailing Date, or as soon thereafter as practicable, the Debtor shall serve by first-class mail, postage prepaid, the notice of the Sale, substantially in the form attached as **Exhibit 5** to the Motion (the "Sale Notice"), upon all other known creditors of the Debtor and all counterparties to the Debtor's executory contracts and unexpired leases.

9.     The Sale Hearing to approve the Sale shall be held on **August 24, 2018 at 11:00 am (Eastern Time)**, at the United States Bankruptcy Court for the Eastern District of Michigan, 211 W. Fort St., Detroit, Michigan 48226, courtroom 1975, before the Honorable Phillip J. Shefferly.

10.     Objections, if any, to the relief sought in the Sale Order ("Sale Objection(s)")[6] shall be in writing, filed with the Clerk of this Court (the "Clerk"), 211 W. Fort St., Detroit, Michigan 48226, together with proof of service, and

---

[6] Procedures for filing objections to the assumption and assignment of relevant executory contracts and unexpired leases are addressed below.

served so as to be received by the Debtor, on or before **5:00 p.m. (Eastern Time)**

**on August 17, 2018**; provided, however, that, if applicable, objections (the

"Supplement") to the conduct of the Auction or selection of the Successful Bids or

Backup Bids (as those terms are defined below and in the Bidding Procedures)

shall be in writing, filed with the Clerk, together with proof of service, on or before

**5:00 p.m. (Eastern Time)** one (1) day prior to the Sale Hearing.

11.     Failure to file and serve a Sale Objection or Supplement as set forth

herein shall be deemed to be consent to the Sale for purposes of section 363(f) of

the Bankruptcy Code.

12.     The Sale Hearing may be adjourned by the Debtor, from time to time

without further notice to creditors or other parties in interest other than by

announcement of the adjournment in open court on the date scheduled for the Sale

Hearing, or by filing a notice on the docket of the Debtor's chapter 11 case.

## The Auction

13.     The Debtor is authorized, if necessary, to conduct an auction (the

"Auction") with respect to the Assets.  The Auction, if necessary, shall take place

on **August 21, 2018 at 10:00 A.M. (Eastern Time)** at the offices of Stevenson &

Bullock, PLC, 26100 American Drive, Suite 500, Southfield, MI 48034, or such

other place and time as the Debtor shall notify all Qualified Bidders, and their

respective counsel and advisors.  The Debtor is authorized, subject to the terms of

this Order, to take actions reasonably necessary, in the discretion of the Debtor, to conduct and implement the Auction.

14.     Only the Debtor, the Buyer, and any other Qualified Bidder, in each case, along with their respective counsel and advisors, may attend the Auction (such attendance to be in person) and only the Buyer and other Qualified Bidders will be entitled to make any Bids at the Auction.  The Debtor and its professionals shall direct and preside over the Auction, and the Auction shall be transcribed.

15.     The Buyer (in its capacity as a Qualified Bidder) and each other Qualified Bidder participating in the Auction must confirm that it has (a) not engaged in any collusion with respect to the bidding or Sale of any of the Assets, (b) reviewed, understands, and accepts the Bidding Procedures, and (c) consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale or the Auction if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

16.     Subject to the rights of parties in interest to (i) challenge the Sale or the sale process, (ii) challenge the Debtor' decisions with respect to the sale process, (iii) argue that such decisions are not governed by the "business judgment" standard, or (iv) such other rights as such parties may have under applicable law, the Debtor may, (a) determine, in its business judgment, pursuant to

the Bidding Procedures, which Qualified Bid is the highest or otherwise best proposal for the Assets (the "<u>Successful Bid</u>" and which is the next highest or otherwise best proposal for the Assets (the "<u>Backup Bid</u>") and (b) reject any bid that, in the Debtor's business judgment, is (x) inadequate or insufficient, (y) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bidding Procedures, or (z) contrary to the best interests of the Debtor and its estate, creditors, interest holders, or other parties-in-interest.

17.     Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures, the Buyer shall be considered a Qualified Bidder.

## **The APA**

18.     Any obligations of the Debtor set forth in the APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order are authorized as set forth herein.

## **Assumption and Assignment Procedures**

19.     The Assumption and Assignment Procedures as set forth in the Motion are hereby approved and made part of this Order as if fully set forth herein. The Assumption and Assignment Procedures are appropriate and fair to all non-Debtor counterparties and comply in all respects with the Bankruptcy Code.

### a.    Cure Notice

20.    The Cure Notice, substantially in the form attached as **Exhibit 6** to the Motion, is (i) reasonably calculated to provide sufficient effective notice to all non-Debtor counterparties to assumed and assigned contracts or leases and any other affected parties of the Debtor's intent to assume and assign some or all of such contracts or leases and to afford the non-Debtor counterparty to each such contract or lease the opportunity to exercise any rights affected by the Motion pursuant to Bankruptcy Rules 2002, 6004, and 6006, and (ii) hereby approved.

21.    The inclusion of a contract on a Cure Notice shall not constitute or be deemed a determination or admission by the Debtor, the Buyer, any Successful Bidder, or any other party in interest that such contract is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that such contract or lease will be assumed in connection with the Sale of the Assets. The Debtor reserves all of its rights, claims and causes of action with respect to the contracts or leases listed on the Cure Notice.

22.    Within five (5) business days after the entry of this Order, or as soon thereafter as is practicable, the Debtor shall file with this Court and serve the Cure Notice on each counterparty to an executory contract or unexpired lease related to the Assets, which Cure Notice shall: (i) state the cure amounts, if any, that the Debtor believes are necessary to assume such contracts or leases pursuant to

section 365 of the Bankruptcy Code (the "Cure Amount"); (ii) notify the non-Debtor counterparty that such party's contract or lease may be assumed and assigned to a Successful Bidder of the Assets at the conclusion of the Auction; (iii) state the date of the Sale Hearing and that objections to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing, or at a later hearing, as determined by the Debtor; and (iv) state the deadline by which the non-Debtor counterparty shall file an objection to the Cure Amount(s) or to the assumption and assignment of the applicable contract(s) and/or lease(s).

23.    Any objection to the Cure Amount or the assumption and assignment of the applicable contract(s) and/or lease(s) must be filed with the Clerk and served on the Debtor so as to be received on or before **August 17, 2018** (the "Cure Objection Deadline").  Any such objection must also state (i) the basis for such objection and (ii) with specificity what Cure Amount(s) the non-Debtor counterparty to the relevant executory contract(s) or unexpired lease(s) believes is required (in all cases with appropriate documentation in support thereof).

24.    Any objection solely to the Cure Amount(s) may not prevent or delay the Debtor's assumption and assignment of assumed and assigned contract(s) or lease(s). If a party objects solely to Cure Amount(s), the Debtor may, with the consent of the relevant Successful Bidder, hold the claimed Cure Amount(s) in reserve pending further order of the Court or mutual agreement of the parties. So

long as the Cure Amount(s) are held in reserve, and there are no other unresolved objections to assumption and assignment of the applicable assumed and assigned contract(s) or lease(s), the Debtor can, without further delay, assume and assign such contract(s) or lease(s) to the applicable Successful Bidder. Under such circumstances, the objecting non-Debtor counterparty's recourse is limited to the funds held in reserve.

25.     If no objection to the Cure Amount(s) is timely received, the Cure Amount(s) set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any assigned contract(s) or lease(s) or other document(s) as of the date of the Cure Notice.

**b.     Designation of Contracts/Leases and Adequate Assurance of Future Performance**

26.     On or before July 30, 2018, the Buyer will provide to the Debtor a list of those executory contracts and unexpired leases that the Buyer elects to have assumed and assigned (the "Buyer Designated Contracts") to the Buyer at Closing pursuant to section 365 of the Bankruptcy Code, subject to the Buyer's right to add or delete executory contracts or unexpired leases in accordance with the APA.

27.     On or before July 31, 2018, the Debtor shall file with the Clerk of the Bankruptcy Court the list of the Buyer Designated Contracts, which the Debtor will update as and when executory contracts or unexpired leases are added or deleted by

the Buyer, and (ii) a description of the Buyer and information as to the Buyer's ability to perform the Debtor's obligations under the Buyer Designated Contracts.

28.     As soon as reasonably practicable after receiving the schedule from each Qualified Bidder of those executory contracts or unexpired leases it wishes to assume, and no later than the date of the Auction, the Debtor shall file such schedule with the Clerk of the Bankruptcy Court, together with information related to the adequate assurance with respect to such Qualified Bidder.

29.     To the extent that any non-Debtor counterparty wishes to object to the adequate assurance of future performance by the Buyer or another Qualified Bidder under the applicable executory contract(s) or unexpired lease(s), then such non-Debtor counterparty shall file a written objection with the Court and serve on the Debtor and the applicable Qualified Bidder(s) so that such objection is received on or before August 17, 2018.

30.     To the extent that any non-Debtor counterparty does not timely file and serve an objection as set forth above, such counterparty will be:  (i) deemed to have consented to the Cure Amount(s), if any, set forth in the Cure Notice; (ii) barred, estopped, and enjoined from asserting any additional Cure Amount(s) under the assumed and assigned executory contract(s) or unexpired lease(s); (iii) barred from objecting to the assumption and assignment of the applicable assumed and assigned executory contract(s) or unexpired lease(s) to the Successful Bidder;

and (iv) barred from objecting to adequate assurance of future performance by the Successful Bidder.

## **Related Relief**

31.     The Debtor is hereby authorized and empowered to take such actions as may be reasonably necessary to implement and effect the terms and requirements established by this Order.

32.     This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

33.     The Debtor is authorized to proceed with the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

34.     This Order shall be binding on the Debtor, including any chapter 7 or chapter 11 trustees or other fiduciary appointed for the Debtor' estates.

35.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7052, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

36.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

# EXHIBIT 2
# ASSET PURCHASE AGREEMENT

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement, dated as of July 23, 2018 (together with any schedules, exhibits and attachments hereto, collectively, the "Agreement"), is made by and between Gregory Kiesgen (the "Buyer") and Michigan Commercial Door Group, LLC, a Michigan limited liability company, (the "Company" or "Seller"). The Buyer and the Seller shall each also be referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS**, the Company is currently a chapter 11 debtor in the United States Bankruptcy Court, Eastern District of Michigan (the "Bankruptcy Court"), Case No. 18-40809-PJS (the "Bankruptcy Case");

**WHEREAS**, the Company is continuing to manage its affairs as a debtor and debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code (as defined below);

**WHEREAS**, pursuant to this Agreement, the Company is seeking to sell substantially all of its assets to Buyer;

**WHEREAS**, the Buyer is willing to purchase the Assets (as defined below) pursuant to the terms herein; and

**WHEREAS**, the Buyer is willing to assume the Assumed Liabilities (as defined below) pursuant to the terms herein.

## TERMS

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

**1.     DEFINITIONS.** For the purposes of this Agreement, the terms listed below shall have the respective meanings indicated:

1.1     "Accounts Receivable" shall mean accounts or notes receivable held by Seller, and any security, claim, remedy, or other right related to any of the foregoing.

1.2  "Agreement" has the meaning set forth in the preamble.

1.3  "Assets" shall mean all of the assets, properties and rights of every kind and nature, whether real, persona, or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired (other than the Excluded Assets), including those listed on **Exhibit A** hereto.

1.4  "Assumed Liabilities" shall mean the Cure Costs, and the accounts payable and accrued expenses that Buyer agrees to assume and pay when due.

1.5  "Assumption Agreement" has the meaning set forth in Section 2.3.

1.6  "Bankruptcy Code" shall mean the United States Bankruptcy Code, 11 U.S.C. §101, *et seq.*

1.7  "Bankruptcy Court" shall have the meaning set forth in the preamble.

1.8  "Bankruptcy Rule" shall mean the Federal Rules of Bankruptcy Procedure.

1.9  "Bidding Procedures Order" has the meaning set forth in the Sale Motion.

1.10  "Bill of Sale" has the meaning set forth in Section 2.2.

1.11  "Buyer" has the meaning set forth in the preamble.

1.12  "Closing Date" shall mean a date that is seven (7) days after the Sale Order is entered by the Bankruptcy Court.

1.13  "Company" has the meaning set forth in the preamble.

1.14  "Cure Costs" means those amounts required to be paid to assume and assign the Executory Contracts.

1.15  "Default Notice" has the meaning set forth in Section 5.1.

1.16  "Due Diligence Materials" has the meaning set forth in Section 4.1.

1.17 "Excluded Liabilities" means all liabilities, obligations or commitments (a) of Company or (b) which in any manner relate to or arise out of the operation of the business or the ownership of the Assets during any period prior to the Closing Date, in each case other than the Assumed Liabilities

1.18 "Executory Contracts" shall mean those executory contracts and unexpired leases of the Company set forth in **Exhibit B** hereto.

1.19 "Execution Date" shall mean the date that all the Parties have executed this Agreement.

1.20 "Excluded Assets" shall mean (a) cash and cash equivalents; (b) claims and causes of action under Chapter 5 of the Bankruptcy Code; (c) those contracts and unexpired leases that are not the Assumed Contracts; (d) the rights that accrue or will accrue to Seller under this Agreement; (e) the corporate seals, organizational documents, minute books, stock books, tax returns, books of account, or other records having to do with the corporate organization of the Seller; and (f) the assets, properties, and rights specifically set forth on **Exhibit C** hereto.

1.21 "Liability" means any liability (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due), including any liability for taxes.

1.22 "Lien" means any mortgage, pledge, hypothecation, lien (statutory or otherwise), preference, priority, charge, adverse claim of ownership or use, restriction on transfer (such as a right of first refusal or similar right), defect of title, security interest or other encumbrance of any kind or nature whatsoever (including any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing and any assignment or deposit arrangement in the nature of a security device)

1.23 "Party" and "Parties" having the meanings set forth in the preamble.

1.24 "Person" means an individual, a partnership, a limited liability company, a corporation, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, any governmental entity or any similar entity.

1.25 "Sale" shall mean a transfer of the Assets from the Company to the Buyer.

1.26 "Sale Motion" shall mean a Motion filed on behalf of the Debtor with the Bankruptcy Court seeking the entry of, *inter alia*, the Sale Order.

1.27 "Sale Order" shall mean an order approving the Agreement entered by the Bankruptcy Court.

1.28 "Sale Term" shall mean the period beginning with the date of the entry of the Sale Order and ending on the Closing Date.

1.29 "Seller" has the meaning set forth in the Preamble.

1.30 "Successful Bidder" has the meaning set forth in Section 9.6.

## 2  SALE AND PURCHASE OF ASSETS AND ASSUMPTION OF EXECUTORY CONTRACTS AND ASSUMED LIABILITIES

2.1 On the terms and conditions set forth herein, after entry of the Sale Order and upon satisfaction of the conditions precedent hereunder, Company shall sell, transfer, assign, convey and deliver to Buyer, and Buyer shall purchase from Company all of Company's right, title, and interest in and to the Assets and Assumed Liabilities.

2.2 On the terms and conditions set forth herein, after entry of the Sale Order and upon satisfaction of the conditions precedent hereunder, the Company shall transfer all of the Assets to the Buyer by Seller's execution and delivery to Buyer of instruments of transfer of the Bill of Sale, attached hereto as **Exhibit A**.

2.3 On the terms and conditions set forth herein, after entry of the Sale Order and upon satisfaction of the conditions precedent hereunder, the Buyer shall assume and agree to pay, perform, and discharge the Executory Contracts by the Parties' execution and delivery of instruments of transfer of the Executory Contracts, attached hereto as **Exhibit B**.

2.4 On the terms and conditions set forth herein, after entry of the Sale Order and upon satisfaction of the conditions precedent hereunder, the Buyer shall assume and agree to pay, perform, and discharge the Assumed Liabilities by the

Parties' execution and delivery of instruments of transfer of the Assumption Agreement, attached hereto as **Exhibit C**.

2.5    Notwithstanding anything to the contrary in this Agreement or any schedule or exhibit hereto, except for Buyer's (a) obligation to pay any liabilities arising out of ownership of the Assets after the Closing Date, (b) Buyer's assumption of the Cure Costs, and (c) Buyer's assumption of any Assumed Liabilities as part of this Agreement, Buyer will not assume or take title to the Assets subject to, or in any way be liable or responsible for, and does not and shall not be deemed to assume any Excluded Liabilities.

2.6    Except as otherwise set forth in this Agreement, the Assets, Executory Contracts, and Assumed Liabilities are being sold and transferred on an "AS IS, WHERE IS" and "WITH ALL FAULTS" basis and COMPANY MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO THE CONDITION OF THE ASSETS ACQUIRED BY BUYER HEREUNDER, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND ALL SUCH WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED.

## 3   PURCHASE PRICE

3.1    The aggregate purchase price for the Assets Executory Contracts, and Assumed Liabilities shall be one hundred ten thousand dollars $110,000.00 (the "Purchase Price"). The Purchase Price shall be paid on or before the Closing Date to the Company by the Buyer by application of the deposit of twenty-five thousand dollars ($25,000.00) and payment of the remaining amount to satisfy the Purchase Price in immediately available funds.

## 4   TERMINATION OF THIS AGREEMENT

4.1    This Agreement may be terminated prior to the Closing as follows:

4.1.1  By mutual written consent of the Parties; or

4.1.2  By Seller or Buyer, if Buyer is not the Successful Bidder.

## 5   REPRESENTATIONS AND WARRANTIES OF THE BUYER

5.1    The Buyer hereby represents, warrants and covenants in favor of the Company as follows:

5.1.1 The Buyer has taken all necessary action required to authorize the execution, performance and delivery of this Agreement, and to consummate the transactions contemplated hereby;

5.1.2 This Agreement is a valid binding obligation of the Buyer enforceable in accordance with its terms; and

5.1.3 To the best of the Buyer's knowledge, no action or proceeding has been instituted or threatened affecting the consummation of this Agreement or the transactions contemplated herein.

5.1.4 The Buyer has the financial ability to complete the transactions contemplated in this Agreement, including payment of the Purchase Price in good and sufficient funds at Closing.

## 6    REPRESENTATIONS AND WARRANTIES OF THE COMPANY

6.1    The Company hereby represents, warrants and covenants in favor of the Buyer as follows:

6.1.1 Upon entry of the Sale Order, the Company will take all necessary action required to authorize the performance and delivery of the Assets pursuant to this Agreement free and clear of any liens, claims or encumbrances;

6.1.2 The Company has good and valid authority to consummate the transactions contemplated hereby;

6.1.3 The Company has legal title to the Assets;

6.1.4 Upon entry of the Sale Order, this Agreement shall be a valid and binding obligation of the Company enforceable in accordance with its terms;

6.1.5 No action, arbitration, suit, notice, or legal, administrative or other proceeding before any court or government body has been instituted by or against the Company or has been settled or resolved, or to the Company's knowledge, is threatened against the Company or the Company's business or

properties, that impacts or affects the validity of this Agreement or that, if adversely determined, would adversely affect the conduct of the Sale; and

## 7 AFFIRMATIVE DUTIES OF THE BUYER

7.1 The Buyer shall reimburse, indemnify, defend and hold the Company and its officers, directors, agents, and employees, harmless from and against any damage, loss, expense (including reasonable attorneys' fees) or penalty, or any claim or action therefore, by or on behalf of any person, arising out of the Buyer's breach of this Agreement.

7.2 The Buyer shall be responsible for obtaining, in the name of and with the assistance of the Company, any permits or licenses necessary to complete the Sale, if any.

7.3 The Buyer is responsible for funding the Cure Costs required for assumption and assignment of the Executory Contracts included as part of the Assets on the Closing Date.

7.4 The Buyer will provide the Company with evidence of financial wherewithal to be able to pay for the Assets, including written evidence of a commitment for financing for the full amount of the proposed Purchase Price (without contingencies) or other evidence of the Buyer's ability to consummate the transaction satisfactory to the Company.

## 8 AFFIRMATIVE DUTIES OF THE COMPANY

8.1 To the extent applicable, the Company shall deliver the corresponding certificates of title for the titled assets included in the Assets on the Closing Date.

8.2 The Company will obtain the Sale Order as soon as practicable after (i) the Buyer being declared the "Successful Bidder," as defined in the Sale Motion, and (ii) the execution of this Agreement by the Buyer. Among other things, the Sale Order will approve the assumption and assignment to the Buyer of those Assumed Liabilities designated by the Buyer as of the Closing Date.

## 9 CONDITIONS PRECEDENT

9.1    The obligations of the Buyer and the Company hereunder are directly conditioned upon the satisfaction of the following conditions at the time or during the time periods indicated:

9.1.1  All representations and warranties of the Buyer and the Company hereunder shall be true and correct in all material respects and no Event of Default (as defined below) shall have occurred as of (i) the Execution Date or (ii) the Closing Date;

9.1.2  The Assets are available for sale;

9.1.3  The Buyer has paid and the Seller has received the Purchase Price in immediately available funds to the Company;

9.1.4  The Company will have received all such further instruments and documents as the Company may reasonably request; and

9.1.5  The Sale Order has been entered by the Bankruptcy Court.

## 10  DEFAULTS

10.1   The following shall constitute an "Event of Default" hereunder:

10.1.1 The failure by the Buyer or the Company to perform any of the respective material obligations hereunder; or

10.1.2 The failure of the Buyer to comply with any terms of any bidding procedures order entered by the Bankruptcy Court; or

10.1.3 The failure of the Buyer to close on this Agreement on the Closing Date; or

10.1.4 Any representation or warranty made by the Company or the Buyer that proves untrue in any material respect as of the date made and until the Closing Date.

10.2   In the event of an Event of Default, the non-defaulting Party may, in its discretion, elect to terminate this Agreement upon three (3) business days' written notice to the other Party. If the Buyer is the defaulting Party, the Buyer shall forfeit the Deposit.

## 11 MISCELLANEOUS

11.1 <u>Amendment and Waiver</u>. This Agreement may be amended and any provision of this Agreement may be waived; provided, that any such amendment or waiver (a) will be binding upon Seller only if such amendment or waiver is set forth in a writing executed by Seller and (b) will be binding upon Buyer only if such amendment or waiver is set forth in a writing executed by Buyer. No course of dealing between or among any Persons having any interest in this Agreement will be deemed effective to modify, amend or discharge any part of this Agreement or any rights or obligations of any Party under or by reason of this Agreement. No failure by any Party to insist upon the strict performance of any covenant, duty, agreement or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof will constitute a waiver of any such breach or any other covenant, duty, agreement or condition.

11.2 <u>Notices</u>. Any notice or other communication under this Agreement shall be in writing and may be delivered personally, sent by facsimile or by prepaid registered or certified mail, or by electronic mail, addressed as follows:

In the case of the Buyer:

> Gregory Kiesgen
> 15300 E. 12 Mile Road
> Roseville, MI 48066

In the case of the Company:

> Michigan Commercial Door Group, LLC
> c/o Elliot G. Crowder
> Stevenson & Bullock, P.L.C.
> 26100 American Drive, Suite 500
> Southfield, MI 48034
> ecrowder@spblclaw.com

> with a copy to:

> Michigan Commercial Door Group, LLC
> Attn.: Natalia K. Gentry

535 Griswold St Suite 2618
Detroit, MI 48226
nataliagentry@gmail.com

11.3   <u>Agency</u>.  Nothing contained herein shall be deemed to create any relationship between the Buyer and the Company other than an agency relationship. It is stipulated that the Parties are not partners or joint ventures.

11.4   <u>Binding Agreement; Assignment</u>.  This Agreement and all of the provisions hereof will be binding upon and inure to the benefit of the Parties and their respective successors and assigns; provided, except as set forth below, that neither this Agreement nor any of the rights, interests or obligations hereunder may be assigned by either of the Parties without the prior written consent of the other Party. Any such assignment made without obtaining the prior written consent of the other Party shall be null and void. Without limiting but subject to the foregoing, at or prior to the Closing, Buyer may assign its rights under this Agreement, without the prior written consent of Seller, in whole or in part, to any Affiliate of Buyer provided Seller does not need to get new consent/orders.

11.5   <u>Severability</u>.  Whenever possible, each provision of this Agreement will be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Agreement.

11.6   <u>No Strict Construction</u>.  The language used in this Agreement will be deemed to be the language chosen by the Parties to express their mutual intent. In the event an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties, and no presumption or burden of proof will arise favoring or disfavoring any Person by virtue of the authorship of any of the provisions of this Agreement.

11.7   <u>Interpretation</u>. The terms "hereof," "herein" and "hereunder" and terms of similar import will refer to this Agreement as a whole and not to any particular provision of this Agreement. Section, clause, exhibit and schedule references contained in this Agreement are references to sections, clauses, exhibits and schedules in or attached to this Agreement, unless otherwise specified. Each defined term used in this Agreement has a comparable meaning when used in its plural or singular form. Each gender-specific term used in this Agreement has a comparable

meaning whether used in a masculine, feminine or gender-neutral form. As used in this Agreement, the terms "knowledge" or "aware" will include the actual knowledge and awareness of the Person in question, and the knowledge and awareness that such Person would have obtained after exercising reasonable diligence in the performance of such Person's duties in the ordinary course. Each reference in this Agreement to any legal requirement will be deemed to include such legal requirement as it hereafter may be amended, supplemented or modified from time to time and any successor thereto, unless such treatment would be contrary to the express terms of this Agreement. Unless expressly stated otherwise, the word "including" shall mean including without limitation.

11.8   Captions. The captions used in this Agreement are for convenience of reference only and do not constitute a part of this Agreement and will not be deemed to limit, characterize or in any way affect any provision of this Agreement, and all provisions of this Agreement will be enforced and construed as if no caption had been used in this Agreement.

11.9   Entire Agreement. This Agreement and the documents referred to herein contain the entire agreement between the Parties and supersede any prior understandings, agreements or representations by or between the Parties, written or oral, which may have related to the subject matter hereof in any way.

11.10 Counterparts. This Agreement may be executed in one or more counterparts, each of which will be deemed an original but all of which taken together will constitute one and the same instrument.

11.11 Governing Law. All questions concerning the construction, validity and interpretation of this Agreement (and all schedules and exhibits hereto) will be governed by and construed in accordance with the internal laws of the State of Michigan, without giving effect to any choice of law or conflict of law provision that would cause the application of the laws of any jurisdiction other than the State of Michigan.

11.12 Expenses. Each of Seller and Buyer each will pay all of their own fees, costs and expenses (including fees, costs and expenses of legal counsel, investment bankers, accountants, brokers or other representatives and consultants and appraisal fees, costs and expenses) in connection with the preparation and negotiation of this Agreement and the transactions contemplated hereby.

11.13 <u>Parties in Interest</u>.  Nothing in this Agreement, express or implied, is intended to confer on any Person other than the Parties and their respective successors and permitted assigns any rights or remedies under or by virtue of this Agreement.

11.14 <u>Waiver of Jury Trial</u>.  AS A SPECIFICALLY BARGAINED INDUCEMENT FOR EACH OF THE PARTIES TO ENTER INTO THIS AGREEMENT (EACH PARTY HAVING HAD OPPORTUNITY TO CONSULT COUNSEL), EACH PARTY EXPRESSLY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY LAWSUIT OR PROCEEDING RELATING TO OR ARISING IN ANY WAY FROM THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREIN.

11.15 <u>Submission to Jurisdiction</u>.  Without limiting any party's right to appeal any Order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms hereof and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (b) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the constitutional authority, jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 11.2; provided, however, that if the Bankruptcy Case has closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Eastern District of Michigan, or any appellate court therefrom, for the resolution of any such claim or dispute.  The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the constitutional authority, jurisdiction and venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Each of the parties hereto hereby consents to process being served by any party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 11.2.

11.16 <u>Exhibits and schedules</u>.  All schedules, exhibits and other transaction documents are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Capitalized terms used in the other transaction documents but not otherwise defined therein will have the respective meanings assigned to such terms in this Agreement. Any matter disclosed on any schedule to this Agreement

shall be deemed to have been disclosed on every other schedule that refers to such schedule by cross reference so long as the nature of the matter disclosed is obvious from a fair reading of the schedule in which the matter is disclosed.

11.17 Electronic Execution. The exchange of copies of this Agreement and of signature pages by facsimile transmission or by electronic transmission in PDF format shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties transmitted by facsimile transmission or by electronic transmission in PDF format shall be deemed to be their original signatures for all purposes. At the request of either Party, any facsimile or electronic document shall be re-executed in original form by the Parties who executed the facsimile or electronic document. At the request of either Party, any facsimile or electronic document shall be re-executed in original form by the Party who executed the facsimile or electronic document.

*[Remainder of Page Intentionally Left Blank – Signatures on Following Page]*

## Exhibit A

### Assets

All of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired (other than the Excluded Assets), which relate to, or are used or held for use in connection with, the business, including, without limitation, the following:

1.  All accounts receivable;
2.  All inventory;
3.  All assumed contracts;
4.  All fixed assets;
5.  All leased real property;
6.  All permits which are held by Seller and required for the conduct of the business as currently conducted or for the ownership and use of the Assets; all rights to any actions of any nature available to or being pursued by Seller to the extent related to the business, the Assets or the Assumed Liabilities, whether arising by way of counterclaim or otherwise;
7.  All prepaid expenses, credits, advance payments, claims, security, refunds, rights of recovery, rights of set-off, rights of recoupment, deposits, charges, sums and fees (including any such item relating to the payment of taxes);
8.  All of Seller's rights under warranties, indemnities, confidentiality agreements and all similar rights against third parties to the extent related to any Assets;
9.  Originals, or where not available, copies, of all books and records, including, but not limited to, books of account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records and data (including all correspondence with any governmental authority), sales material and records (including pricing history, total sales, terms and conditions of sale, sales and pricing policies and practices), strategic plans, internal financial statements, marketing and promotional surveys, material and research; and
10. All goodwill and the going concern value of the business.

**IN WITNESS WHEREOF**, the undersigned Parties have entered into and executed this Agreement to be effective as of the day and year first above written.

**GREGORY KIESGEN**

By: _____
    Gregory Kiesgen

**MICHIGAN COMMERCIAL DOOR GROUP, LLC**

By: _____
    Natalia K. Gentry
Its:   Responsible Person

# EXHIBIT 3
## BID PROCEDURES

# BIDDING PROCEDURES[7]

Michigan Commercial Door Group, LLC (the "Debtor"), a debtor and debtor in possession in a chapter 11 case pending in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"), Case No. 18-40809 (the "Chapter 11 Case"), has sought approval (the "Motion") of, among other things, certain procedures through which it will determine the highest or otherwise best offer for the sale of substantially all of its assets (collectively, the "Assets").

As referenced in the Motion, an asset purchase agreement (including all exhibits, schedules and ancillary agreements related thereto, and as amended and in effect, the "APA") has been entered into by and among the Debtor and Gregory Kiesgen (the "Buyer"), dated as of July 23, 2018, which APA contemplates a purchase and sale of the Assets to the Buyer, on the terms and subject to the conditions provided therein. A copy of the APA is attached as **Exhibit 2** to the Motion.

On July __, 2018, the Bankruptcy Court entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtor to determine the highest or otherwise best offer for the Assets through the process and procedures set forth herein (the "Bidding Procedures").

## Assets to Be Sold

A party may participate in the bidding process by submitting a Bid (as defined below) for substantially all of the Assets. Bidders who intend to submit a Bid for the Assets should reference the APA in connection with such Bid.

All of the Debtor's right, title, and interest in and to the Assets subject thereto shall be sold free and clear of any claim, lien, encumbrance or interest, with such claims, liens, encumbrances or interests to attach to the proceeds of the sale of the Assets with the same validity and priority as such claims, liens, encumbrances or interests applied against the Assets.

---

[7] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

## Bidding Process

The Debtor shall, subject to the other provisions of these Bidding Procedures: (a) determine whether any person is a Qualified Bidder (as defined below), (b) coordinate the efforts of Preliminary Interested Investors (as defined below) in conducting their due diligence investigations, (c) receive offers from Bidders, and (d) negotiate any offers made to purchase the Assets.

## Key Dates For Potential Competing Bidders

The Bidding Procedures provide interested parties with the opportunity to qualify for and participate in the Auction to be conducted by the Debtor and to submit competing bids for the Assets. The Debtor shall assist Preliminary Interested Investors in conducting their respective due diligence investigations and shall accept Bids until **August 17, at 5:00 p.m. (Eastern Time)** (the "Bid Deadline").

The key dates for the sale process are as follows:[8]

| | |
|---|---|
| Bid Deadline - Due Date for Bids and Deposits | August 17, 2018 at 5:00 p.m. |
| Auction, which will be held at: Stevenson & Bullock, PLC, 26100 American Drive, Suite 500, Southfield, MI 48034 | August 21, 2018 at 10:00 a.m. |
| Sale Hearing, which will be held at the United States Bankruptcy Court for the Eastern District of Michigan, 211 W. Fort St., Detroit, Michigan 48226 | August 24, 2018 at 11:00 a.m. |

To participate in the bidding process and to receive access to due diligence materials (the "Diligence Materials"), a party must submit to the Debtor: (i) an executed confidentiality agreement in substantially the form attached as **Exhibit 4** to the Motion, the material provisions of which the Debtor shall not waive and shall use reasonable efforts to enforce, and (ii) reasonable evidence demonstrating the party's financial capability to consummate a sale transaction for the Assets (an "Alternate Transaction"), as determined by the Debtor.

---

[8] These dates are subject to extension or adjournment as provided for herein.

A party who qualifies for access to Diligence Materials shall be a "Preliminary Interested Investor." The Debtor will afford any Preliminary Interested Investor the time and opportunity to conduct reasonable due diligence; provided, however, that the Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline to any party that has not submitted a Qualified Bid (as defined below) and may limit the amount of further due diligence available to Qualified Bidders after the Bid Deadline.

The Debtor reserves the right to withhold any Diligence Materials that the Debtor determines are business-sensitive or otherwise not appropriate for disclosure to a Preliminary Interested Investor who is a competitor of the Debtor or is affiliated with any competitor of the Debtor. Neither the Debtor nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Preliminary Interested Investor.

All due diligence requests must be directed to: Stevenson & Bullock, PLC, Attn: Elliot Crowder and Ernest M. Hassan, III, 26100 American Drive, Suite 500, Southfield, MI 48034.

Each Preliminary Interested Investor and each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtor or its advisors regarding such Preliminary Interested Investor or Bidder, as applicable, and its contemplated transaction. Failure by a Preliminary Interested Investor or Bidder (other than the Buyer) to comply with requests for additional information and due diligence access may be a basis for the Debtor to determine that such Bidder is not a Qualified Bidder.

## Auction Qualification Process

To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (other than the Buyer) (each, a "Bidder"), must satisfy each of the following conditions:

(a) **Good Faith Deposit**: Each Bid must be accompanied by a cash deposit in the amount of twenty-five thousand dollars ($25,000.00), which deposit shall be held in an interest-bearing escrow account to be identified and established by the Debtor (the "Good Faith Deposit").

(b) **Better Terms**: In connection with any Bid for the Assets, such Bid must be on terms that the Debtor, in its business judgment determines is substantially better for the Debtor than the terms of the APA.

(c) **Executed Agreement**: Each Bid must be based on the APA, and must include binding, executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate an Alternate Transaction. A Bid must also include a copy of the counter APA (including all exhibits thereto) marked against the APA, to show all changes requested by the Bidder (including those related to purchase price and to remove any provisions that apply only to the Buyer).

(d) **Scope of Bid**: A Bid must be for all or substantially all of the Assets.

(e) **Minimum Bid:** A Bid for the Assets must have a Purchase Price, including any assumption of liabilities that in the Debtor's reasonable business judgment has a value of at least one hundred twenty thousand dollars ($120,000.00). A Bid for the Assets may not be contingent upon any financing conditions whatsoever.

(f) **Designation of Assigned Contracts and Leases**: A Bid must identify the executory contracts and unexpired leases with respect to which the Bidder seeks assignment from the Debtor.

(g) **Designation of Assumed Liabilities**: A Bid must identify all liabilities which the Bidder proposes to assume.

(h) **Corporate Authority**: A Bid must include written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the proposed Alternate Transaction, as applicable; provided that, if the Bidder is an entity specially formed for the purpose of effectuating the Alternate Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the Alternate Transaction, as applicable, by the ultimate equity holder(s) of such Bidder.

(i)   **<u>Disclosure of Identity of Bidder</u>**: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets, including any ultimate equity holders in the case of a Bidder which is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid. A Bid must also fully disclose any connections or agreements with the Debtor, the Buyer or any other known, potential, prospective Bidder or Qualified Bidder, and/or any officer, director, or equity security holder of the Debtor.

(j)   **<u>Proof of Financial Ability to Perform</u>**: A Bid must include written evidence that the Debtor may conclude demonstrates that the Bidder has the necessary financial ability to close the Alternate Transaction, as applicable, and comply with section 365 of the Bankruptcy Code, including providing adequate assurance of future performance under all contracts to be assumed and assigned in such Alternate Transaction. Such information must include, *inter alia*, the following:

    (1)   contact names and numbers for verification of non-contingent financing sources;

    (2)   evidence of the Bidder's internal resources and proof of unconditional debt funding commitments from a recognized banking institution and, if applicable, unconditional equity commitments in an aggregate amount equal to the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtor in the amount of the cash portion of such Bid, in each case, as are needed to close such Alternate Transaction; and

    (3)   any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Bidder has the ability to close the Alternate Transaction.

(k) **Regulatory and Third Party Approvals**: A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Alternate Transaction, and the time period within which the Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the counter APA, those actions the Bidder will take to ensure receipt of such approval(s) as promptly as possible).

(l) **Contact Information and Affiliates**: A Bid must provide the identity and contact information for the Bidder.

(m) **Contingencies**: Each Bid (i) may not contain representations and warranties, covenants, or termination rights materially more onerous in the aggregate to the Debtor than those set forth in the APA, as determined by the Debtor in good faith, and (ii) may not be conditioned on obtaining financing, any internal approvals or credit committee approvals, or on the outcome or review of due diligence, including with respect to any Environmental Laws, or employee, labor, health and/or safety matters.

(n) **Irrevocable**: Each Bid must be irrevocable until five (5) business days after the Sale Hearing; provided that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable until the closing of the Sale.

(o) **Compliance with Diligence Requests**: The Bidder submitting the Bid must have complied with all requests for additional information and due diligence access from the Debtor to the reasonable satisfaction of the Debtor.

(p) **Confidentiality Agreement**: To the extent not already executed, the Bid must include an executed confidentiality agreement in substantially the form attached as **Exhibit 4** to the Motion.

(q) **Termination Fees**: The Bid must not entitle the Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and, by submitting the Bid, the Bidder waives the right to pursue a substantial contribution claim

under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or participation in any Auction.

(r) **Closing Date**: The Bid must include a commitment to close the transactions contemplated by the counter APA by no later than August 31, 2018.

(s) **Bid Deadline**: The following parties must receive a copy of each Bid in writing on or before the Bid Deadline: counsel to the Debtor, Stevenson & Bullock, PLC, Attn: Elliot Crowder and Ernest M. Hassan, III, 26100 American Drive, Suite 500, Southfield, MI 48034.

A Bid received from a Bidder before the Bid Deadline that meets all of the above requirements shall constitute a "Qualified Bid" and such Bidder shall constitute a "Qualified Bidder". Any amendments, supplements, or other modifications to any Bids (including pursuant to this paragraph) prior to the Bid Deadline shall be delivered to the Debtor and may not be submitted after the Bid Deadline. All Qualified Bids will be considered, but the Debtor reserves its right to reject any or all bids (other than the Buyer's). Additionally, notwithstanding anything herein to the contrary, the Buyer shall be deemed a Qualified Bidder. The Debtor shall inform the Buyer and any Qualified Bidders whether the Debtor considers any Bid to be a Qualified Bid as soon as practicable but no event later than one (1) business day before the Auction.

Each Qualified Bidder, by submitting a Bid, shall be deemed to acknowledge and agree that it is not relying upon any written or oral statements, representations, promises, warranties, or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party, including the Debtor and their agents and representatives (other than as may be set forth in a definitive agreement executed by the Debtor), regarding the Debtor, any of the Assets, the Auction, these Bidding Procedures or any information provided in connection therewith.

## Auction

If one or more Qualified Bids (other than the APA) are submitted by the Bid Deadline, the Debtor will conduct an auction (the "Auction") at 10:00 A.M. (Eastern Time) on August 21, 2018 at the offices of Stevenson & Bullock, PLC, 26100 American Drive, Suite 500, Southfield, MI 48034 to determine the highest

or otherwise best Qualified Bid with respect to the Assets. This determination shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the Debtor's estate and may include, but are not limited to, the following: (i) the amount and nature of the consideration, including any assumed liabilities; (ii) the number, type and nature of any modifications to the APA requested by each Bidder in such Bidder's counter APA; (iii) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtor of such modifications or delay; (iv) the total consideration to be received by the Debtor; (v) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (vi) the net benefit to the Debtor's estates (collectively, the "Bid Assessment Criteria").

If no timely, conforming Qualified Bids for the Assets are received, the Auction for the Assets shall be canceled and the APA shall be the Successful Bid for the Assets and the Buyer shall be the Successful Bidder for the Assets.

Only the Debtor, the Buyer, and any other Qualified Bidder, in each case, along with their representatives and counsel, may attend the Auction (such attendance to be in person) and only the Buyer and such other Qualified Bidders will be entitled to make any Bids at the Auction.

The Debtor and its advisors shall direct and preside over the Auction and the Auction shall be transcribed. Other than as expressly set forth herein, the Debtor may conduct the Auction in the manner it reasonably determines will result in the highest or otherwise best purchase price for the Assets.

One (1) day prior to the Auction, the Debtor will:

(i)     notify each Qualified Bidder that has timely submitted a Qualified Bid that its Bid is a Qualified Bid; and

(ii)    provide each Qualified Bidder participating in the Auction with a copy of the counter APA(s) associated with all Qualified Bids and an indication as to which Qualified Bid is the highest or otherwise best Qualified Bid with respect to the Assets, as determined by the Debtor, received before the Bid Deadline (the "Auction Baseline Bid").

In addition, at the start of the Auction, the Debtor shall describe the terms of the Auction Baseline Bid. Each Qualified Bidder participating in the Auction must

confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands, and accepts the Bidding Procedures, and (c) has consented to the core jurisdiction of the Bankruptcy Court.

An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

    (a)    **Minimum Overbid Increments**: Any Overbid for all or substantially all of the Assets, after and above the Auction Baseline Bid, shall be made in increments valued at not less than $10,000.00 (or such other amount as shall be announced at the Auction by the Debtor) in cash or in cash equivalents, or other forms of consideration acceptable to the Debtor.

    (b)    **Remaining Terms Are the Same as for Qualified Bids**: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the APA in connection therewith. Any Overbid must remain open and binding on the Bidder as provided herein.

        At the Debtor's discretion, to the extent not previously provided, a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating such Bidder's ability, not contingent on any financing or equity funding contingencies whatsoever, to close the Alternate Transaction proposed by such Overbid.

    (c)    **Announcement of Overbids**: The Debtor shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each such Overbid, and the basis for calculating such total consideration.

All Qualified Bidders (including the Buyer) at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the marketing process, the Auction, and the construction and enforcement of the Qualified Bidder's fully executed sale and transaction documents, as applicable.

The Debtor may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bidding Procedures or the APA. Any Auction rules adopted by the Debtor will not modify any of the terms of the APA or the rights of the Buyer under the Bid Procedures (as may be consensually modified at the Auction) without the consent of the Buyer.

Except as otherwise provided in the APA, or any order by the Bankruptcy Court approving any Sale of the Assets as contemplated hereunder, the applicable Assets sold pursuant to the Bidding Procedures shall be conveyed at the closing of the purchase and sale in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED.**"

The Auction shall continue in additional rounds of bidding until the Debtor selects the Bid that is the highest or otherwise best offer for the Assets from among the Qualified Bids submitted at the Auction (each, a "Successful Bid," and the Bidder submitting such Successful Bid, a "Successful Bidder"). The Successful Bidder shall have the rights and responsibilities of the Buyer(s) as set forth in the APA. In selecting the Successful Bid, the Debtor shall consider the Bid Assessment Criteria. The Auction shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of its Successful Bid.

Promptly following the Debtor's selection of the Successful Bid and the conclusion of the Auction, or if there are no Qualified Bids received prior to the deadline, the Debtor shall then immediately file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Bid at the Auction with respect to the Assets, as determined by the Debtor, in the exercise of its business judgment, will be designated as the backup bidder (the "Backup Bidder"). The Backup Bidder shall be required to keep its initial Bid (or if

such Backup Bidder submitted one or more Overbids at the Auction, the Backup Bidder's final Overbid) (the "Backup Bid") open and irrevocable until after the closing of the relevant transaction with the Successful Bidder. Notwithstanding anything to the contrary herein, with respect to the Stalking Horse, the Stalking Horse shall not be a Backup Bidder except at the option of the Stalking Horse.

Following the Sale Hearing, if the Successful Bidder fails to consummate the purchase of the Assets, the Debtor may deem the Backup Bidder with respect to the Assets to have the new Successful Bid, and the Debtor will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with such Backup Bidder at the price of its last bid with respect to the Assets. The Debtor, on its behalf and on behalf of its estate, specifically reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

For the avoidance of doubt, in the event that there is a Successful Bidder (other than the Buyer) with respect to all or substantially all of the Assets, and (at its option) the Buyer is the Backup Bidder, the Buyer will be deemed to be the Backup Bidder at the price of its last Overbid, with respect to the Assets and will be subject to the terms contained in the immediately preceding paragraph.

## Sale Hearing

The Successful Bid and the Backup Bid (or, if no Qualified Bid other than that of the Buyer is received, then the APA) will be subject to approval by the Bankruptcy Court. The sale hearing to approve each Successful Bid and any Backup Bid (or, the APA for the Assets, if no Qualified Bid other than that of the Buyer is received) shall take place on **August 24, 2018 at 11:00 a.m. (Eastern Time)** before the Bankruptcy Court (the "Sale Hearing"). The Sale Hearing may be adjourned by the Debtor, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of the Debtor's chapter 11 case.

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtor, but shall not become property of the Debtor's bankruptcy estate absent further order of the Bankruptcy Court or as expressly provided below. The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder, if any, shall be returned to such Backup Bidder no later than seventy-two (72) hours after the closing of the transaction with the Successful Bidder. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If a Successful Bidder timely closes on its winning transaction, its Good Faith Deposit shall be credited towards the purchase price. If a Successful Bidder (or Backup Bidder, if applicable) fails to consummate an Alternate Transaction because of a breach or failure to perform on the part of such Successful Bidder (or Backup Bidder, if applicable), the Debtor will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder (or Backup Bidder, if applicable), and such Good Faith Deposit shall irrevocably become property of the Debtor.

## Reservation of Rights of the Debtor

Except as otherwise provided in the APA, the Bidding Procedures, or the Bidding Procedures Order, the Debtor further reserves the right as it may reasonably determine to be in the best interest of the estate to: (a) determine which Bidder(s) is a Qualified Bidder(s); (b) determine which Bid(s) is a Qualified Bid(s); (c) determine which Qualified Bid is the highest or otherwise best proposal for the Assets and which is the next highest or otherwise best proposal for the Assets; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtor and its estate.

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ _____
Ernest M. Hassan, III (P67815)
Elliot G. Crowder (P76137)
Counsel for Debtor
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: ehassan@sbplclaw.com
Email: ecrowder@sbplclaw.com

Dated: July __, 2018

# EXHIBIT 4
## CONFIDENTIALITY AGREEMENT

# CONFIDENTIALITY AGREEMENT

This CONFIDENTIALITY AGREEMENT (this "Agreement") is dated as of _____, 2018 (the "Effective Date") by and between Michigan Commercial Door Group, LLC ("Discloser") and _____ ("Recipient").

WHEREAS, on January 22, 2018, Discloser filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and is a debtor and debtor-in-possession in a chapter 11 bankruptcy proceeding (Case No. 18-40809-PJS) (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court").

WHEREAS, Recipient is interested in entering into a possible transaction (the "Possible Transaction") for the purchase of all or substantially all of the assets of Discloser.

WHEREAS, Discloser intends to furnish Recipient and its representatives (defined below) with certain Confidential Information (defined below) to facilitate Recipient's due diligence in connection with the Possible Transaction.

WHEREAS, as a condition to the delivery of the Confidential Information, Discloser desires that Recipient and its representatives maintain the confidentiality of the Confidential Information and use the same only for the purposes contemplated by this Agreement.

NOW, THEREFORE, in consideration for and as a condition to Discloser's furnishing Confidential Information, the parties agree as follows:

## 1.     CONFIDENTIAL INFORMATION

As used in this Agreement, the term "Confidential Information" means all information regarding the Discloser or its assets or businesses that is furnished to the Recipient, directly or indirectly by the Discloser or its members, partners, directors, officers, employees, agents, financing sources, and advisors (including attorneys, accountants, consultants, bankers, and financial advisors) ("representatives") regardless of whether specifically identified as "Confidential" and regardless of whatever form or medium such information may take during or after its communication and shall include, but not be limited to, information regarding the Discloser's financial data, operations, business records, programs,

products, methods, techniques, processes, plans, drawings, specifications, prototypes, intellectual property, business policies, business practices, projections, financial and economic models, economic data, personally identifiable information about the individuals in the organization, applicants for positions within the organization, information about those persons and entities with whom the Discloser interacts (including employees, customers, potential customers, investors, vendors, and suppliers), potential transactions, and all materials containing or reflecting such information.

Notwithstanding the foregoing, "Confidential Information" shall not include information (a) in the public domain at or subsequent to the time such portion was communicated to the Recipient by the Discloser (other than as a result of violation of this Agreement), (b) in the Recipient's possession and to the Recipient's knowledge free of any obligation of confidence at or subsequent to the time such portion was communicated to the Recipient by the Discloser, or (c) independently developed or acquired by the Recipient or any of its representatives without any violation of this Agreement.

## 2.    NONDISCLOSURE AND NON USE OBLIGATION

Recipient agrees to maintain the confidentiality of the Confidential Information and shall not, directly or indirectly, during the term of this Agreement: (a) transfer or disclose orally, in writing, or electronically any Confidential Information to any third party, except for its internal use or use by its representatives in connection with making a bid for a Possible Transaction; or (b) use any Confidential Information for any purpose other than for the purpose of evaluating the interests of Recipient in making a bid for a Possible Transaction.  In addition, without the Discloser's prior written consent, the Recipient will not, and will direct its representatives not to, disclose to any person the fact that Recipient is evaluating whether to (i) make an offer to purchase some or all of Discloser's business operations and/or assets and (ii) participate in the auction, if any, of Discloser's assets.

## 3.    DISCLOSURES TO REPRESENTATIVES

It is understood that the Recipient may disclose Confidential Information to only those of Recipient's representatives who (a) require such material for the purpose of evaluating the Possible Transaction, and (b) are informed by Recipient of the confidential nature of the Confidential Information and the obligations of this Agreement and agrees to abide by such terms.  Recipient further agrees that

Recipient and Recipient's representatives will not use any of the Confidential Information for any reason or purpose other than to evaluate and to negotiate the Possible Transaction. Recipient also agrees to be responsible for enforcing this Agreement as to Recipient's representatives and to take such action, legal or otherwise, to the extent necessary to cause them to comply with this Agreement and thereby prevent any disclosure of the Confidential Information by any of the Recipient's representatives (including all actions that the Recipient would take to protect its own trade secrets and confidential information) except as permitted by this Agreement.

## 4.    LEGAL PROCEEDINGS

In the event that Recipient or any of its representatives is required by any law, regulation, interrogatories, requests for information or documents, subpoenas, civil investigative demand, or similar process to disclose any Confidential Information, to the extent reasonably practicable, such party will provide Discloser with prompt written notice of such request or requirement so that Discloser may seek an appropriate protective order or take other appropriate action (and if Discloser seeks such an order or takes such action, such party will provide such cooperation as Discloser shall reasonably request). If Recipient or any of its representatives are nonetheless required to disclose Confidential Information, such party may disclose only that portion of the Confidential Information that is legally required to be disclosed and will exercise reasonable efforts to obtain assurance that confidential treatment will be accorded such Confidential Information.

## 5.    RETURN/DESTRUCTION OF CONFIDENTIAL INFORMATION

Recipient agrees that Discloser retains all right, title and interest in the Confidential Information and that it shall either return to Discloser or destroy all Confidential Information, and all copies thereof, without further notice, within ten calendar days of October 1, 2018, unless Recipient receives notice by Discloser, in electronic form or otherwise, that it is a Qualified Bidder.

## 6.    NO OBLIGATION TO NEGOTIATE OR ENTER A TRANSACTION

Discloser reserves the right, in its sole discretion, to reject any and all proposals made by Recipient or Recipient's representatives with regard to a Possible Transaction and to terminate discussions and negotiations with Recipient and Recipient's representatives at any time. Neither Recipient nor Discloser shall have rights or obligations of any kind whatsoever with respect to a Possible

Transaction by virtue of this Agreement other than for the matters specifically agreed to herein. Without limiting the preceding sentences, nothing in this Agreement requires either Recipient or Discloser to enter into a Possible Transaction or to negotiate such transaction for any specified period of time.

## 7. TERMINATION

The obligations set forth in this Agreement shall survive for a period of time from the Effective Date to a date that is the earlier of (a) the completion of the Possible Transaction between Disclosure and Recipient, (b) the confirmation of a chapter 11 plan in the Discloser's bankruptcy case, and (c) the conversion of the Discloser's chapter 11 case to a chapter 7 case.

## 8. NO REPRESENTATIONS OR WARRANTIES

Discloser retains the right to determine, in its sole discretion, what information, properties, and personnel it wishes to make available to Recipient, and neither Discloser nor its representatives make any representation or warranty (express or implied) concerning the completeness or accuracy of the Confidential Information, except pursuant to representations and warranties that may be made in a definitive agreement for a Possible Transaction, if any, between the parties. Recipient agrees that that it is not entitled to rely on the completeness or accuracy of the Confidential information and that it will be entitled to rely solely on such representations and warranties as may be included in any definitive agreement with respect to a Possible Transaction, subject to such limitations and restrictions as may be contained therein.

## 9. REMEDIES

Recipient acknowledges and agrees that Discloser may suffer irreparable injury not compensable by money damages in the event of breach of the provisions of this Agreement and therefore may not have an adequate remedy at law. Accordingly, Discloser shall be entitled to injunctive relief to prevent or curtail any such breach, threatened or actual, without necessity of posting a bond. In view of the difficulty of determining the amount of damages which may result to the Discloser from a violation of any provision of this Agreement, the Recipient shall pay of the Discloser the sum of ONE HUNDRED THOUSAND ($100,000.00) DOLLARS as liquidated damaged for any such violation. However, the payment of such amount as liquidated damages shall not be construed as a release or waiver by the Discloser of the right to prevent any such violation in equity or otherwise.

The Parties agree that any violation of this Agreement by the Recipient or its representatives will harm and damage the Discloser in an amount that exceeds $100,001.00, and that $100,000.00 is a reasonable sum for liquidated damages. In the event the Recipient or its representative breaches any of its obligations under this Agreement then, in addition to all other damages including actual damages and any statutory damages under applicable laws, the Recipient shall be liable to the Discloser for any costs, fees or expenses, including reasonable attorneys' fees, incurred by the Discloser to enforce the terms of this Agreement. The foregoing shall be in addition and without prejudice to such other rights as Discloser may have at law or in equity.

## 10.    MISCELLANEOUS

Modification.  This Agreement may not be amended or modified except by an instrument in writing signed by or on behalf of the parties hereto.

Waiver.  Neither the failure nor any delay by any party in exercising any right, power, or privilege under this letter agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege.

Severability.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.  If any of the covenants or provisions of this Agreement are determined to be unenforceable by reason of its extent, duration, scope, or otherwise, then the parties contemplate that the court making such determination shall reduce such extent, duration, scope or other provision and enforce them in their reduced form for all purposes contemplated by this Agreement.

Construction.  The headings of sections in this Agreement are provided for convenience only and will not affect its construction or interpretation.  All words used in this Agreement will be construed to be of such gender or number as the circumstances require.  Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms.  The parties have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or

disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

Execution.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes.  Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for any purpose whatsoever.

Jurisdiction.  Without limiting any Party's right to appeal any order of the Bankruptcy Court, the Parties agree that the Bankruptcy Court shall retain sole jurisdiction over any legal action or proceeding with respect to this Agreement, and each of the Parties consents to the jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein.

Governing Law.  This letter agreement will be governed by the laws of the State of Michigan without regard to conflicts-of-laws principles.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above written.

**MICHIGAN COMMERCIAL DOOR GROUP, LLC**

By: _____
Name: Natalia K. Gentry
Title: Responsible Person

**[RECIPIENT'S NAME]**

By: _____
Name:
Title:

# EXHIBIT 5
## SALE NOTICE

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION – DETROIT

**IN THE MATTER OF:**

| | |
|---|---|
| Michigan Commercial Door Group, LLC, | Bankruptcy Case No. 18-40809 |
| | Chapter 11 |
| Debtor. | Hon. Phillip J. Shefferly |

## NOTICE OF BIDDING PROCEDURES, AUCTION DATE, AND SALE HEARING

### PLEASE TAKE NOTICE THAT:

1. On July __, 2018, Michigan Commercial Door Group, LLC (the "Debtor") filed its Motion (the "Motion") for (A) an Order (I) Establishing Bidding Procedures for the Sale of Substantially All of the Debtor's Assets; (II) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Approving Form and Manner of the Sale, Cure and Other Notices; and (IV) Scheduling an Auction and a Hearing to Consider the Approval of the Sale; (B) An Order (I) Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, and Encumbrances; and (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Certain Related Relief.[9] By the Motion, the Debtor seeks, *inter alia*, to sell (the "Sale") substantially all of its assets (the "Assets") and to assume and assign certain executory contracts and unexpired leases (the "Purchased Contracts") to Gregory Kiesgen (the "Buyer") pursuant to an asset purchase agreement by and among the Debtor and the Buyer (the "APA"), subject to higher or otherwise better offers, and/or the Successful Bidder at the Auction.

2. On July __, 2018 pursuant to the Motion, the Court entered an Order (the "Bidding Procedures Order") approving auction and bidding procedures (the "Bidding Procedures") in connection with the proposed Sale. A copy of the Motion, the Bidding Procedures Order and the Bidding Procedures can be obtained from counsel to the Debtor, Stevenson & Bullock, PLC, Attn: Elliot Crowder and Ernest M. Hassan, III, 26100 American Drive, Suite 500, Southfield, MI 48034.

---

[9] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3.     The Auction shall take place on **August 21, 2018 at 10:00 AM (Eastern Time)** at the offices of Stevenson & Bullock, PLC, 26100 American Drive, Suite 500, Southfield, MI 48034.

4.     A hearing to approve the Sale (the "Sale Hearing"), including the assumption and assignment of certain Purchased Contracts, will be held on **August 24, 2018 at 11:00 AM (Eastern Time)**, at the United States Bankruptcy Court for the Eastern District of Michigan, 211 W. Fort St., Detroit, Michigan 48226, before the Honorable Phillip J. Shefferly.  The Sale Hearing may be adjourned by the Debtor from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of the Debtor's chapter 11 bankruptcy case.

5.     Pursuant to the Bidding Procedures Order, any objections to the Sale ("Sale Objections") must be set forth in writing and must state with particularity the grounds for such objections or other statements of position.  Sale Objections must be filed with the Clerk of the Bankruptcy Court and served on counsel to the Debtor, Stevenson & Bullock, PLC, Attn: Elliot Crowder and Ernest M. Hassan, III, 26100 American Drive, Suite 500, Southfield, MI 48034 by **5:00 PM (Eastern Time) on August 17, 2018**; provided that objections to the conduct of the Auction or selection of the Successful Bid or the Backup Bid shall be in writing, filed with the Clerk, together with proof of service, and served so as to be received by the Debtor on or before **5:00 p.m. (Eastern Time) one (1) day prior to the Sale Hearing**.  UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT AND THE COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.

6.     This Notice is subject to the fuller terms and conditions of the Motion and the Bidding Procedures Order, which shall control in the event of any conflict, and the Debtor encourages parties-in-interest to review such documents in their entirety.

7.     Copies of the Motion, the Bidding Procedures Order, the Bidding Procedures, and the form APA, are available from counsel to the Debtor, Stevenson & Bullock, PLC, Attn: Elliot Crowder and Ernest M. Hassan, III, 26100 American Drive, Suite 500, Southfield, MI 48034.

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/
_____
Ernest M. Hassan, III (P67815)
Elliot G. Crowder (P76137)
Counsel for Debtor
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: ehassan@sbplclaw.com
Email: ecrowder@sbplclaw.com

Dated: July __, 2018

# EXHIBIT 6
## CURE NOTICE

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION – DETROIT**

**IN THE MATTER OF:**

| | |
|---|---|
| Michigan Commercial Door Group, LLC, | Bankruptcy Case No. 18-40809 |
| | Chapter 11 |
| Debtor. | Hon. Phillip J. Shefferly |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
AND PROPOSED CURE AMOUNTS**

1.     On July __, 2018, Michigan Commercial Door Group, LLC (the "<u>Debtor</u>") filed its Motion (the "<u>Motion</u>") for (A) an Order (I) Establishing Bidding Procedures for the Sale of Substantially All of the Debtor's Assets; (II) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Approving Form and Manner of the Sale, Cure and Other Notices; and (IV) Scheduling an Auction and a Hearing to Consider the Approval of the Sale; (B) An Order (I) Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, and Encumbrances; and (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Certain Related Relief.[10]  By the Motion, the Debtor seeks, *inter alia*, to sell (the "<u>Sale</u>") substantially all of its assets (the "<u>Assets</u>") and to assume and assign certain executory contracts and unexpired leases (the "<u>Purchased Contracts</u>") to Gregory Kiesgen (the "<u>Buyer</u>") pursuant to an asset purchase agreement by and among the Debtor and the Buyer (the "<u>APA</u>"), subject to higher or otherwise better offers, and/or the Successful Bidder at the Auction.

2.     On July __, 2018, pursuant to the Motion, the Court entered an Order (the "<u>Bidding Procedures Order</u>") approving auction and bidding procedures (the "<u>Bidding Procedures</u>") in connection with the proposed Sale.  A copy of the Motion, the Bidding Procedures Order and the Bidding Procedures can be obtained from counsel to the Debtor, Stevenson & Bullock, PLC, Attn: Elliot Crowder and Ernest M. Hassan, III, 26100 American Drive, Suite 500, Southfield, MI 48034.

---

[10] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3.     A hearing to approve the Sale (the "Sale Hearing"), including the assumption and assignment of certain Purchased Contracts, will be held on **August 24, 2018 at 11:00 AM (Eastern Time)**, at the United States Bankruptcy Court for the Eastern District of Michigan, before the Honorable Phillip J. Shefferly.  The Sale Hearing may be adjourned by the Debtor from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of the Debtor' chapter 11 bankruptcy case.

4.     Pursuant to the Motion, the Debtor may assume and assign the contract(s) and lease(s) identified on **Exhibit A** (the "Subject Contract(s)") to the Successful Bidder at the Auction.[11]   The cure amount (the "Cure Amount"), if any, the Debtor believes is required to satisfy all amounts and obligations due and owing under each Subject Contract by the Debtor, including any monetary defaults and compensation for pecuniary losses, is listed on **Exhibit A** (the "Cure Schedule").

5.     The deadline to file an objection to the assumption and assignment of the Subject Contract(s) and the Cure Amount(s) for such Subject Contract(s) (together, "Cure Objections") is **August 17, 2018** (the "Cure Objection Deadline"). Cure Objections, if any, must be filed with the Clerk of the Bankruptcy Court and served on counsel to the Debtor, Stevenson & Bullock, PLC, Attn: Elliot Crowder and Ernest M. Hassan, III, 26100 American Drive, Suite 500, Southfield, MI 48034.

6.     Any Cure Objection must state (i) the basis for the objection and (ii) with specificity, what Cure Amount(s) the party to the Subject Contract(s) believes is required (in all cases with appropriate documentation in support thereof).

7.     Any objection solely to the Cure Amount(s) may not prevent or delay the Debtor's assumption and assignment of the Subject Contract(s).  If a non-

---

[11] The Debtor may modify the list of contracts and leases that will be assumed and assigned in connection with the Sale. In addition, the inclusion of any contract or agreement on **Exhibit A** to the Cure Notice shall not constitute an admission by the Debtor that any such contract is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code and the Debtor reserves all rights with respect thereto.

Debtor counterparty (a "Non-Debtor Counterparty") objects solely to Cure Amount(s), the Debtor may, with the consent of the Successful Bidder, hold the claimed Cure Amount(s) in reserve pending further order of the Court or mutual agreement of the parties. So long as Cure Amount(s) are held in reserve, and there are no other unresolved objections to assumption and assignment of the applicable Subject Contract(s), the Debtor can, without further delay, assume and assign such Subject Contract(s) to the applicable Successful Bidder. Under such circumstances, the objecting Non-Debtor Counterparty's recourse is limited to the funds held in reserve.

8.      Any objections to the adequate assurance of future performance by the Buyer and/or another Successful Bidder under the applicable Subject Contract(s) must be filed with the Court and served on the Debtor and the applicable Successful Bidder so that such objection is received on or before **August 17, 2018** (the "Adequate Assurance Objection Deadline").

9.      Unless a Cure Objection or an objection to adequate assurance of future performance, as applicable, is filed and served by a Non-Debtor Counterparty to any Subject Contract by the Cure Objection Deadline or the Adequate Assurance Objection Deadline, as applicable, such Non-Debtor Counterparty shall be: (i) deemed to have waived and released any right to assert a Cure Objection and to have otherwise consented to the assignment of such Subject Contract, (ii) forever barred from objecting to the assumption and assignment of such Subject Contract or the failure of the Successful Bidder to provide adequate assurance of future performance, and (iii) forever barred and estopped from asserting or claiming any Cure Amount, other than the Cure Amount listed on the Cure Schedule.

10.     The hearings with respect to Cure Objection(s) or objection(s) to the adequate assurance of future performance may be held (a) at the Sale Hearing, or (b) at such other date as the Court may designate.

11.     Copies of the Motion, the Bidding Procedures Order, the Bidding Procedures, and the form APA, are available from counsel to the Debtor, Stevenson & Bullock, PLC, Attn: Elliot Crowder and Ernest M. Hassan, III, 26100 American Drive, Suite 500, Southfield, MI 48034.

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ _____
Ernest M. Hassan, III (P67815)
Elliot G. Crowder (P76137)
Counsel for Debtor
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: ehassan@sbplclaw.com
Email: ecrowder@sbplclaw.com

Dated: July __, 2018

**Exhibit A to Cure Notice**

## CURE SCHEDULE

| Description of Subject Contract | Name and Contact Information of Counterparty | Cure Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**EXHIBIT 7**
**SALE ORDER**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION – DETROIT

**IN THE MATTER OF:**

| | |
|---|---|
| Michigan Commercial Door Group, LLC, | Bankruptcy Case No. 18-40809 |
| | Chapter 11 |
| Debtor. | Hon. Phillip J. Shefferly |

## ORDER (I) APPROVING THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; AND (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the Motion of Michigan Commercial Door Group, LLC (the "Debtor"), pursuant to sections 105, 363, 365 and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, 6004, 6006, 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 6004-1 and 9014-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Michigan (each a "Local Rule," and, collectively, the "Local Rules") for, among other things, entry of an order authorizing and approving (I) the sale of substantially all of the Debtor's assets (the "Assets") free and clear of liens, claims, and encumbrances, and (II) the assumption and assignment of executory contracts and unexpired leases (the

"Motion");[12] and the Court having taking into consideration the *Order (I) Establishing Bidding Procedures for the Sale of Substantially All of the Debtors' Assets; (II) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases, (III) Approving Form and Manner of the Sale, Cure, and Other Notes; (IV) Scheduling an Auction and a Hearing to Consider the Approval of the Sale; and (V) Granting Certain Related Relief* [Doc. No. __] (the "Bidding Procedures Order"); [and the Debtor having conducted an auction on August 21, 2018 (the "Auction") in accordance with the Bidding Procedures Order]; _____ ("Buyer") having submitted the highest and best Qualified Bid (as that term is defined in the Bidding Procedures Order) for the Assets and having been chosen by the Debtor as the Successful Bidder (as that term is defined in the Bidding Procedures Order) upon the conclusion of the Auction; and the Court having conducted a hearing on the Sale Motion on August 24, 2018 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered: (i) the Motion and the exhibits thereto, (ii) the Asset Purchase Agreement, substantially in the form attached as **Exhibit 2** to the Motion by and among Buyer and the Debtor ("APA"), whereby the Debtor has agreed, among

---

[12] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion, the Bidding Procedures or the Bidding Procedures Order, as applicable.

other things, to sell the Assets to Buyer (the "Sale") and to assume and assign to Buyer certain executory contracts and unexpired leases (collectively, the "Purchased Contracts") in connection with the Sale; and it appearing that due notice of the Motion, the Bidding Procedures Order, and the form of order proposed by the Debtor to be entered granting the Motion has been provided in accordance with the Bidding Procedures Order; and it appearing that the relief requested in the Motion is in the best interests of the Debtor and its estate, and upon the full record of this bankruptcy case, the Sale Hearing and all filings and other hearings in this case; and after due deliberation thereon; and good cause appearing therefore;

### THE COURT HEREBY FINDS THAT:[13]

A.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Motion are sections 105(a), 363, 365 and 503 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, 9007 and 9014.

---

[13] In accordance with Bankruptcy Rule 7052, when appropriate, all findings of fact shall be construed as conclusions of law, and all conclusions of law shall be construed as findings of fact.

C.     This Court entered its Bidding Procedures Order which, among other things: (i) established the bidding procedures (the "<u>Bidding Procedures</u>") for the sale of the Assets at public auction; (ii) set the Sale Hearing date; and (iii) approved the form of notice regarding same.

D.     The Bidding Procedures provided a full, fair, and reasonable opportunity for any interested party to make an offer to purchase the Assets. [The Debtor received __ bids, and the Buyer's bid was designated as the Successful Bid pursuant to the Bidding Procedures Order].

E.     Notice of the Motion, the Bidding Procedures Order and the Sale Hearing was served upon: (a) all entities known to have expressed a *bona fide* interest in purchasing any of the Assets; (b) all entities known to have asserted any lien, claim, or encumbrance in or upon any of the Assets; (c) all federal, state, and local environmental, regulatory, or taxing authorities or recording offices that have a reasonably known interest in the relief requested by the Motion; (d) the Office of the United States Trustee; and (e) all persons and entities that have filed a request for service of filings in this chapter 11 case pursuant to Bankruptcy Rule 2002.

F.     Under the circumstances of this case, the notice of the Motion and the Sale Hearing as described above was proper, timely, adequate, and sufficient, and was provided in accordance with all applicable laws including, but not limited to, section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and

6006, in compliance with the Bidding Procedures Order and the Local Rules, and was reasonably calculated to reach and apprise all holders of liens, claims, encumbrances, and interests, and no other or further notice of the Motion and Sale Hearing or any matters in connection therewith is or shall be required.

G. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all parties in interest.

H. As evidenced by the Motion, the testimony and other evidence proffered or adduced at the Sale Hearing, and the representations of counsel made on the record at the Sale Hearing, and in light of the circumstances of this chapter 11 case: (i) the Debtor has adequately marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order; (ii) interested parties have been given a reasonable opportunity to make a higher or better offer for the Assets; (iii) the consideration provided for in the APA constitutes the highest and best offer for the Assets and provides fair and reasonable consideration for the Assets; (iv) prompt approval of the Sale is the best means to preserve and maximize the value of the Debtor's assets; (v) the Sale maximizes the fair value for parties in interest; (vi) the Debtor is receiving reasonably equivalent value for the Assets; and (vii) the Debtor's determination that the APA constitutes the highest and best offer for the Assets and that the Sale represents a better alternative for the

Debtor's estate than an immediate liquidation constitutes valid and sound exercises of the Debtor's business judgment.

I.      The sale [and auction] process and sale was non-collusive, fair and reasonable, conducted in good faith and at arm's length. Neither the Debtor nor the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code, or that would cause or permit the APA and the Sale to be avoided under section 363(n) of the Bankruptcy Code. The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, the Buyer is entitled to all the protections afforded thereby. In the absence of a stay pending any appeal of this Order, Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale pursuant to the APA at any time after entry of this Order. Any reversal or modification on appeal of the authorization provided in this Order to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of any executory contracts), unless such authorization is duly stayed pending such appeal.

J.      Approval of the APA and consummation of the Sale at this time is in the best interests of the Debtor and its estate.

K.      The Debtor: (i) has full power and authority to execute the APA and all other documents contemplated thereby, and the sale of the Assets has been duly and validly authorized by all necessary action of the Debtor; (ii) has all the power

and authority necessary to consummate the Sale pursuant to the APA; and (iii) has taken all action necessary to authorize and approve the APA and the Sale.

L.     The transfer of the Assets to the Buyer pursuant to the APA will be a legal, valid, and effective transfer of the Assets and will vest the Buyer with all right, title, and interest of the Debtor to the Assets free and clear of liens, claims, encumbrances, and interests (other than Permitted Encumbrances and Assumed Liabilities), including rights or claims based upon any successor or transferee liability.

M.     The Debtor may sell the Assets free and clear of all liens, claims, encumbrances, and interests of any kind or nature whatsoever (other than Permitted Encumbrances and Assumed Liabilities), including rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

N.     The Buyer shall have no liability for any obligation of, or claim against, the Debtor or its bankruptcy estate related or unrelated to the Assets by reason of the transfer of the Assets to the Buyer.

O.     Unless otherwise expressly included in Permitted Encumbrances under the APA, the Buyer shall not be responsible for any Liens or Interests, including in respect of the following: (1) any labor or employment agreements; (2)

all mortgages, deeds of trust and security interests; (3) intercompany loans and receivables between the Debtor and any non-Debtor affiliate, (4) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtor; (5) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (1) any other state or federal benefits or claims relating to any employment with the Debtor or any of their respective predecessors; (6) Claims or Interests arising under any Environmental Laws with respect to any assets owned or operated by Debtor or any corporate predecessor at any time prior to the Closing Date; (7) any liabilities of the Debtor other than the Assumed Liabilities; (8) as defined in the APA, the "Excluded Liabilities"; (9) any

bulk sales or similar law; (10) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (11) any theories of successor liability. The Buyer shall not be deemed, as a result of any action taken in connection with the Sale and the purchase of the Assets or otherwise, to be a successor to the Debtor because, among other reasons: (i) the Buyer is not expressly or impliedly agreeing to assume any of the Debtor's liabilities (other than Assumed Liabilities); (ii) the Sale does not amount to a consolidation, merger, or *de facto* merger of the Debtor and the Buyer; (iii) the Buyer is not merely a continuation of the Debtor; and (iv) the Sale is not being entered into fraudulently or in order to escape liability from the Debtor's debts.

P.     The Buyer would not have entered into the APA and would not consummate the Sale without the findings contained in this Order and if: (i) the sale of the Assets was not free and clear of all liens, claims, encumbrances, and interests (other than Permitted Encumbrances and Assumed Liabilities), including rights or claims based upon any successor or transferee liability; or (ii) the Buyer would, or in the future could, be liable for any liabilities other than the Assumed Liabilities.

Q.     The Debtor has demonstrated that it is in the exercise of its sound business judgment to assume and assign the Purchased Contracts to the Buyer in connection with the consummation of the Sale, and the assumption and assignment

of the Purchased Contracts is in the best interests of the Debtor and its estate. The Purchased Contracts being assigned to, and the liabilities being assumed by, the Buyer are an integral part of the Assets being purchased by the Buyer and, accordingly, such assumption and assignment of the Purchased Contracts and liabilities is reasonable, maximizes the value of the Debtor's estate, and does not constitute unfair discrimination.

R. The Debtor has: (i) cured and/or provided adequate assurance of cure of any default requiring cure existing prior to the date hereof under any of the Purchased Contracts that have been designated by the Buyer for assumption and assignment under the APA, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Purchased Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

S. Adequate assurance of future performance under the Purchased Contracts has been provided within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

T. The Assumption and Assignment Procedures are fair, appropriate, and effective and, upon payment of all cure amounts and approval of the assumption and assignment for a particular Purchased Contract thereunder, the Debtor shall be

forever released (except as otherwise provided (i) herein, (ii) in the APA, (iii) in the Motion, or (iv) any order of this Court) from any and all liability under the Purchased Contracts.

U. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Consistent with Bankruptcy Rules 6004(h) and 6006(d), there is no just reason for delay in the implementation of this Order, there shall be no stay as would otherwise exist under Bankruptcy Rule 6004(h), and this Order shall become effective immediately upon entry.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### I. Approval of Sale

1. All objections to the Motion or the relief requested therein that pertain to the Motion or the APA that have not been withdrawn, waived or settled are hereby overruled on the merits for the reasons set forth on the record at the Sale Hearing and as set forth herein. Those parties in interest that did not object, or who withdrew their objections, are deemed to have consented to the entry of this Order pursuant to section 363(f)(2) of the Bankruptcy Code.

2. Notice of the Motion and Sale Hearing was proper, timely, adequate, and sufficient, and complied in all respects with the Bidding Procedures Order, the Bankruptcy Rules and the Local Rules.

3.     The APA and all terms and conditions thereof (subject to any modifications contained herein) are approved in all respects. If there is any conflict between the APA and this Order, this Order shall control.

4.     Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtor is authorized to perform its obligations under, and comply with the terms of, the APA and consummate the Sale.

5.     The Debtor, the Buyer, and their respective representatives are authorized to execute and deliver, and empowered to perform under, consummate, and implement the APA, together with all additional instruments and documents that the Debtor or Buyer deem necessary or appropriate to implement the APA and effectuate the Sale, and to take all further actions as may reasonably be required by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession the Assets or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.  All previous actions taken by the Debtor and its representatives in connection with the APA and the Sale are deemed approved.

6.     This Order and the APA shall be binding in all respects upon: (i) the Debtor; (ii) its affiliates; (iii) all known and unknown creditors of, and holders of equity security interests in, the Debtor, including any holders of liens, claims, encumbrances, or interests; (iv) all non-Debtor parties to the Purchased Contracts;

(v) the Buyer and its successors and assigns; (vi) all interested parties, their successors and assigns, and (vii) any trustees appointed in the Debtor's chapter 11 case or upon the conversion of the case to a case under chapter 7 of the Bankruptcy Code, and shall not be subject to rejection.

7.      Except as set forth in the APA, the sale of the Assets is "as is," "where is," and "with all faults." The Debtor does not warrant quality of the title or warrant the condition of the Assets, except as otherwise specifically set forth in the APA.

## II.      Transfer of Assets Free and Clear

8.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtor may transfer the Assets to the Buyer in accordance with the APA and, upon closing, the Assets shall be free and clear of all liens, claims, encumbrances, and interests of any kind or nature whatsoever (other than Permitted Encumbrances and Assumed Liabilities), including rights or claims based upon successor or transferee liability, and all such liens, claims, encumbrances, and interests, including rights or claims shall attach to the net proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they now have as against the Assets, subject to any claims and defenses the Debtor or any other party in interest may possess with respect thereto.

9.     Except for the Assumed Liabilities, or as otherwise expressly provided for in this Order or the Purchase Agreement, the Buyer shall not have any liability or other obligation of the Debtor arising under or related to any of the Assets. Without limiting the generality of the foregoing, the Buyer shall not be liable for any Claims or Interests against the Debtor or any of its predecessors or affiliates, other than the Assumed Liabilities, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between the Debtor and any non-Debtor affiliate, liabilities relating to or arising from any Environmental Laws, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the Closing.  Neither the purchase of the Assets by the Buyer nor the fact that the Buyer is using any of the Assets previously operated by the Debtor will cause the Buyer to be deemed a successor in any respect to the Debtor's businesses or incur any liability derived therefrom within the meaning of any foreign, federal,

state, or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule, or regulation or doctrine.

10.    Except with respect to Permitted Encumbrances and Assumed Liabilities, all persons and entities, including, but not limited to, all debt security holders, equity security holders, unions, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens or Interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Assets to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer, any of its affiliates, its successors or assigns, their property or the Assets, such persons' or entities' Liens or Interests in and to the Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, any of its affiliates, its successors, assets or

properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, any of its affiliates, its successors, assets or properties; (iii) creating, perfecting, or enforcing any Lien or other Claim against the Buyer, any of its affiliates, its successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyer, any of its affiliates or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets or (vii) any action seeking to hold the Buyer liable as a successor under any collective bargaining agreement of the Debtor. On the Closing Date, or as soon as possible thereafter, each creditor is authorized and directed, and the Buyer is hereby authorized, on behalf of each of the Debtor's creditors, to execute such documents and take all other actions as may be necessary to release Liens or Interests in or on the Assets (except Permitted Encumbrances and Assumed Liabilities), if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

11.    Except to the extent expressly included in the Assumed Liabilities, or by applicable law or statue, the Buyer and its affiliates shall have no liability, obligation or responsibility under the WARN Act (29 U.S.C. §§ 210 et seq.), CERCLA or any foreign, federal, state or local labor, employment or Environmental Law by virtue of the Buyer's purchase of the Assets or assumption of the Assumed Liabilities.

12.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to the Buyer in accordance with the terms of the Purchase Agreement and this Order.

13.    The Buyer has given substantial consideration under the Purchase Agreement for the benefit of the Debtor, its estate, and creditors. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Order, which releases shall be deemed to have been given in favor of the Buyer by all holders of Liens against or interests in, or Claims against the Debtor or any of the Assets, other than holders of Liens or Claims relating to the Assumed Liabilities. As a good faith Buyer of the Assets, the Buyer has not entered into an agreement relating to the bidding or acquisition of the Assets with any other potential bidders at the Auction, and has not colluded with any other bidders, potential bidders, or any other parties

interested in the Assets, and, therefore, neither the Debtor nor any successor in interest to the Debtor's estate shall be entitled to bring an action against the Buyer. The consideration provided by the Buyer for the Assets under the Purchase Agreement is fair and reasonable and accordingly the purchase may not be avoided under section 363(n) of the Bankruptcy Code

14.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with any recorder to evidence the cancellation of the liens, claims, encumbrances (other than Permitted Encumbrances and Assumed Liabilities), or interests in the Assets.

15.     The transfer of the Assets to the Buyer pursuant to the APA constitutes a legal, valid, and effective transfer of the Assets and shall vest the Buyer with all right, title, and interest of the Debtor in and to the Assets free and clear of all liens, claims, encumbrances, and interests of any kind or nature whatsoever (other than Permitted Encumbrances and Assumed Liabilities), including rights or claims based upon any successor or transferee liability, other than the Assumed Liabilities. The subsequent dismissal of this case shall not affect the transfer of the Assets to the Buyer, nor shall any such dismissal cause the Assets to re-vest in the Debtor.

16.     On the closing of the Sale, all liens, claims, encumbrances, or interests (other than Permitted Encumbrances and Assumed Liabilities) against the Assets

shall, without the necessity of further action on the part of the Buyer, Debtor, or any creditor, be deemed released and discharged, and shall attach to the proceeds of sale, in the order of their priority, with the same validity, force, and effect which they now have as against the Assets. On the closing of the Sale, each of the Debtor's creditors and any other holder of a lien, claim, encumbrance, or interest (other than Permitted Encumbrances and Assumed Liabilities), is authorized and directed to execute such documents and take all other actions as may be necessary to release its lien, claim, encumbrance, or interest (other than Permitted Encumbrances and Assumed Liabilities) in the Assets, if any, as such lien, claim, encumbrance, or interest may have been recorded or may otherwise exist.

17.     If any person has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing a lien, claim, encumbrance, or interest in the Assets (other than Permitted Encumbrances and Assumed Liabilities) and has not delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, release of all liens, claims, encumbrances, or interests, which the person has with respect to the Assets or otherwise, then: (i) the Debtor is authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person with respect to the Assets; and (ii) the Buyer is authorized to file, register, or otherwise record a

certified copy of this Order, which shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and interests of any kind or nature whatsoever in the Assets.

### III. Assumption and Assignment of Purchased Contracts

18. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code and subject to and conditioned upon (i) the closing of the Sale, and (ii) the resolution of any relevant objections other than a Cure Objection (an "Objection"), and by order of this Court overruling such objection or upon agreement of the parties, the Debtor's assumption and assignment to the Buyer of each Purchased Contract is approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.

19. The Debtor is authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to: (i) execute and deliver to the Buyer such documents or other instruments as the Buyer reasonably deems may be necessary to assign and transfer the Purchased Contracts to the Buyer, and (ii) Promptly Pay (as defined below) the identified Cure Amount with respect to each Purchased Contract. For the avoidance of doubt, all of the Debtor's rights to assert credits, chargebacks, setoffs, rebates, and other claims under the Purchased Contracts are purchased by and assigned to the Buyer as of the closing of the Sale. As used herein, "Promptly Pay" means: (i) with respect to any Cure Amount (or

portion thereof, if any) which is undisputed, payment as soon as reasonably practicable, but not later than five (5) business days after the closing of the Sale; and (ii) with respect to any Cure Amount (or portion thereof, if any) which is disputed, payment as soon as reasonably practicable, but not later than five (5) business days after such dispute is resolved or such later date upon agreement of the parties and, in the event bankruptcy court approval is required, upon entry of a final order of the Bankruptcy Court. On and after the closing of the Sale, the Buyer shall: (i) perform any nonmonetary defaults that are required under section 365(b) of the Bankruptcy Code; and (ii) pay all undisputed, unpaid obligations and perform all obligations that arise or come due under each Purchased Contract in the ordinary course on and after the Closing Date.

20. The Purchased Contracts shall be transferred and assigned pursuant to the Bidding Procedures Order, the APA and this Order and, thereafter, remain in full force and effect for the benefit of the Buyer, notwithstanding any provision in any such Purchased Contract (including those of the type described in sections 365(b)(2), (e)(1), and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Purchased Contracts after such assumption and assignment to the Buyer.

21.     Except as may be contested in an Objection, each Purchased Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code and the Debtor may assume each of the respective Purchased Contracts in accordance with section 365 of the Bankruptcy Code.

22.     Except as may be contested in an Objection, the Debtor may assign each Purchased Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Purchased Contract that prohibit or condition the assignment of such Purchased Contract or terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Purchased Contract, constitute unenforceable anti-assignment provisions which are void.

23.     At such time as provided in the Bidding Procedures Order and the APA, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all rights, title, and interests of each Purchased Contract. With respect to leases of personal property that are true leases and not subject to recharacterization, nothing in this Order shall transfer to the Buyer an ownership interest in any leased property not owned by the Debtor.

24.     Except in connection with any ongoing Objection, each non-Debtor party to a Purchased Contract is forever barred, estopped, and permanently enjoined from: (i) asserting against the Debtor or Buyer, their successors or

assigns, or their respective property, any default arising prior to, or existing as of, the date that this case was commenced, or, against the Buyer, any counterclaim, defense, or setoff (other than defenses interposed in connection with, or related to, credits, chargebacks, setoffs, rebates, and other claims asserted by the Debtor or the Buyer in its capacity as assignee), or other claim asserted or assertable against the Debtor; and (ii) imposing or charging against the Debtor, Buyer, or their affiliates, any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtor's assumption and assignment to the Buyer of the Purchased Contracts.

25.    The failure of the Debtor or Buyer to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions, or of the Debtor's and the Buyer's rights to enforce every term and condition of the Purchased Contracts.

26.    The authority hereunder for the Debtor to assume and assign a Purchased Contract to the Buyer includes the authority to assume and assign a Purchased Contract, as amended.

27.    The assignment of each of the Purchased Contracts is made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

**IV.    Additional Provisions**

28.    The consideration provided by the Buyer for the Assets under the APA is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

29.    The Sale is undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and was negotiated by the parties at arm's length, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of any of the Purchased Contracts), unless such authorization is duly stayed pending such appeal.  In the event of any stay, modification, reversal or vacation of this Order, then notwithstanding any such stay, modification, reversal or vacation, all obligations incurred by the Debtor under this Order and the Purchase Agreement prior to the effective date of such stay, modification, reversal or vacation will be governed in all respects by the original provisions of this Order, and Buyer shall be entitled to the rights, privileges and benefits granted in this Order with respect to all such obligations.

30.    Twenty-five thousand dollars ($25,000.00) of the sale proceeds shall be held by Stevenson & Bullock, P.L.C. in its IOLTA account pending approval of any fees and expenses for Stevenson & Bullock, P.L.C., as counsel for the Debtor,

and is an agreed upon carve out and surcharge pursuant to 11 U.S.C. § 506(c) from the sale proceeds otherwise allocable to Gregory Kiesgen.

31.     Subject to further Court order and consistent with the terms of the APA, the Debtor and the Buyer are authorized to, and shall, take appropriate measures to maintain and preserve, until the consummation of any chapter 11 plan, the following: (i) the books, records, and any other documentation relating to the Debtor's business; and (ii) the cash management system maintained by the Debtor prior to the Closing, as such system may be necessary to effect the orderly administration of the Debtor's estate.

32.     No law of any state or other jurisdiction relating to bulk sales laws, or similar laws, shall apply in any way to the transactions pursuant to the Sale, the APA, the Motion, and this Order.

33.     Each and every federal and local governmental agency, department or official is hereby directed to accept any and all documents and instruments necessary to consummate the transactions contemplated by the APA.

34.     The failure to specifically include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety, except as modified herein.

35.     The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate or on any non-consenting party in interest. Any such proposed modification, amendment, or supplement that does have a material adverse effect on the Debtor's estate or on any non-consenting party in interest shall be subject to further order of the Court, on appropriate notice.

36.     This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, in all respects, including but not limited to, retaining jurisdiction to: (i) compel delivery of the Assets to the Buyer; (ii) compel performance of other obligations owed by or to the Debtor, including payment of the Purchase Price; (iii) resolve any disputes arising out of or related to the APA; and (iv) interpret, implement, and enforce the provisions of this Order.

37.     Notwithstanding the provisions of Bankruptcy Rules 6004 and 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is

hereby expressly waived and shall not apply. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the closing, or risk its appeal will be foreclosed as moot.